# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**BCJJ, LLC, a Florida limited liability company,**

      **Plaintiff,**

vs.                                                 **Case No.: 8:09-CV-551-T-17EAJ**

**THOMAS J. LEFEVRE, et al.,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Before the court are Defendant Bayonne, LLC's **Motion to Require Plaintiff to Post a Bond** (Dkt. 51), Plaintiff's **Opposition to Motion to Require Plaintiff to Post a Bond** (Dkt. 73) Defendant Bayonne, LLC's **Emergency Supplement to Motion to Require Plaintiff to Post a Bond** (Dkt. 84), and Plaintiff's **Response to Defendant's Emergency Supplement to Motion to Require Plaintiff to Post a Bond** (Dkt. 86).[1]

Defendant Bayonne, LLC ("Bayonne") moved to discharge a notice of lis pendens or, alternatively, to require Plaintiff to post a bond after an evidentiary hearing on the amount of damages incurred as a result of the notice of lis pendens. The district court denied Bayonne's motion to discharge the notice of lis pendens and referred the motion to require Plaintiff to post a bond for an evidentiary hearing on the amount of the bond.

Having considered the evidence and arguments of the parties and these findings of fact and conclusions of law, I recommend that Bayonne's motions to require plaintiff to post a bond (Dkts.

---

[1] These motions have been referred to the undersigned for a Report and Recommendation (Dkts. 88 and 89). See 28 U.S.C. § 636(b); Local Rules 6.01(b) and (c), M.D. Fla.

51 and 84) be granted in part and that Plaintiff be required to post a lis pendens bond in the amount of $47,455.00.

## FINDINGS OF FACT

The following facts are either undisputed or have been established by a preponderance of the evidence:

1. On May 29, 2009, Plaintiff filed a 12-count amended complaint against multiple Defendants seeking damages arising out a failed investment in a real estate development project in Sarasota, Florida.

2. The development project consisted of two adjoining parcels: the Commercial Property and the Waterfront Property. The Waterfront Property is owned by Bayonne. Plaintiff alleges that the development project is subject to a Joint Development Agreement, which established a joint venture between Bayonne and Defendant Bayonne Investments, LLC ("BI") with respect to the development project.

3. Plaintiff contends it lost an investment of $400,000 based on a series of false representations made by Bayonne, BI, Thomas J. LeFevre ("LeFevre"), a managing member of Bayonne and BI, and Evan Berlin ("Berlin"), counsel for Bayonne and LeFevre. Count 12 of Plaintiff's amended complaint seeks the imposition of an equitable lien on the Waterfront Property owned by Bayonne.

4. On June 4, 2009, Plaintiff filed and recorded a notice of lis pendens against the Waterfront Property. There is no recorded instrument upon which the lis pendens is based.

5. The Waterfront Property is subject to a first mortgage with Comerica Bank in the amount of approximately $12.7 million. The loan on the Waterfront Property matured in July 2009. As

Bayonne is in default on the mortgage, the bank has demanded the balance. The Commercial Property is in foreclosure.

6. Bayonne has invested approximately $8.5 million in the development project.

7. Bayonne retained Norton, Hammersley, Lopez & Skokos, P.A. ("Norton, Hammersley") to represent it in this action. Norton, Hammersley is charging an hourly rate of $375.00 for the work of two partners and an hourly rate of $225.00 for the work of two fourth-year associates.

8. From June 1, 2009 to November 15, 2009, Norton, Hammersley billed Bayonne approximately $52,000 for work performed in this litigation. For work related to the notice of lis pendens during this period, Bayonne is seeking $44,120.00 in attorney's fees and costs.

9. Norton, Hammersley prepared a proposed litigation budget to defend the equitable lien claim, dissolve the lis pendens, and prosecute a slander of title claim. The proposed litigation budget of $192,820.00 includes the $44,120.00 in incurred fees and costs.[2]

10. Jeffery Carter Andersen, Esq. ("Andersen"), Bayonne's expert witness, testified regarding the attorneys' fees and costs that Bayonne will likely incur in defending the equitable lien claim, dissolving the lis pendens, and bringing a slander of title claim. After reviewing the pleadings, the case management report, the proposed litigation budget, the invoices of Bayonne's counsel, and the backgrounds of Bayonne's counsel, and after conferring with Bayonne's counsel regarding the defense of the case, Andersen concluded that the amount of attorneys' fees and costs likely to be incurred is $229,695.00.

11. Andersen testified that $44,120.00 is a reasonable amount of fees and costs for work

---

[2] Defendant clarified that due to mathematical errors, the proposed litigation budget incorrectly stated the total costs and fees as $212,545.00.

performed from June 1, 2009 to November 15, 2009 relating to the equitable lien claim, the notice of lis pendens, and the slander of title claim.

12. Based on the experience, skill, and reputation of the attorneys at Norton, Hammersley, Andersen concluded that the hourly rates charged by the attorneys were reasonable. For the incurred attorneys' fees and costs of $44,120.00, Andersen categorized the fees and costs into three categories: (a) $30,746.00 for reviewing the amended complaint, drafting a motion to dismiss, drafting a motion to discharge the lis pendens and related motions, reviewing Plaintiff's responses to Bayonne's motions, and preparing for a hearing on a motion to require Plaintiff to file a lis pendens bond; (b) $5,751.00 for work related to the initial case management conference, Rule 26 disclosures, the case management order, and related motions; and ( c) $7,623.00 for work related to discovery, including any responses to requests for production of documents, motions to compel, motions for protective order, confidentiality agreements, and other unspecified work.[3]

13. Andersen used Norton, Hammersley's proposed litigation budget as a tool to estimate the reasonable fees and costs Bayonne will likely incur in defending the equitable lien claim. After reviewing the proposed litigation budget, Andersen added $36,875.00 in fees and costs for discovery, deposition transcripts, and trial preparation: (a) $6,750.00 for 30 additional hours of associate time for preparing and responding to discovery, (b) $6,500.00 for the cost of deposition transcripts, ( c) $6,750.00 for an additional 30 hours of associate time for preparing and responding

---

[3] In estimating the amount of legal fees, Andersen did not include entries where the descriptions of work were totally redacted. However, billing entries with partially redacted descriptions of work were included in Andersen's estimate of fees. Andersen was advised by Bayonne's counsel that the redacted entries on Norton, Hammersley's invoices contained confidential information.

to summary judgment motions, and (d) $16,875.00 to reflect 75 additional hours of associate time for trial preparation.

14. Andersen testified that the equitable lien claim (Count 12) is intertwined and related to the fraud and misrepresentation claims (Counts 2, 3, 4, and 5). In order to defend the equitable lien claim, Andersen stated that Bayonne must defend against the claims of fraud and misrepresentation. However, if the equitable lien claim is dismissed and the notice of lis pendens is discharged, Andersen asserted the remaining counts in the amended complaint could proceed to trial. Andersen admitted that, to defend against the equitable lien claim and to dissolve the notice of lis pendens, it is not necessary to bring a slander of title claim or to file an affirmative motion for summary judgment addressing all claims in the amended complaint.

15. In May 2009, Malcolm J. Pitchford, Esq. ("Pitchford"), Defendant's expert, was retained to investigate the potential impact of the notice of lis pendens on Defendant's ability to obtain refinancing on the Waterfront Property. To evaluate the effect of the notice of lis pendens, Pitchford contacted various commercial lenders. Because the notice of lis pendens created a cloud on the property's title, Pitchford stated that lenders were reluctant to loan funds to Bayonne. Pitchford testified that it was his "understanding" that Comerica Bank will refinance the mortgage on the Waterfront Property if the lis pendens is discharged. However, Pitchford admitted that he had no idea whether other factors prevented Bayonne from obtaining refinancing.

16. According to Pitchford, the following factors may make it difficult for a borrower to obtain a new loan or refinance a mortgage: (1) stricter borrowing requirements instituted by lenders, (2) a default on an existing mortgage, (3) the vacant and undeveloped nature of the property, (4) a decrease in the value of the property, (5) a requirement for a personal guarantee on the loan, (6) the

environmental contamination of the property, (7) a change in ownership of the property, (8) the financial problems of the borrower, (9) the rezoning of the property, (10) litigation relating to the property, and (11) a deterioration of financial market conditions.

17. The title commitment from First American Title Insurance Company on the Waterfront Property requires the discharge of the notice of lis pendens (Def. Ex. 8).

18. To obtain a refinancing loan without title insurance, Bayonne would be required to set up a fund to cover the amount of the lis pendens and any associated costs. Pitchford concluded that Defendant would be required to set up a fund of at least $600,000.00 as cash security for a new loan.

19. Anderson's and Pitchford's expert witness fees through the date of the hearing total $8,450.00.

20. Leonard Nadolski, the managing partner for Bayonne, testified regarding Bayonne's efforts to obtain refinancing. Although Bayonne attempted to obtain refinancing from eleven commercial lenders, Nadolski stated that the disclosure of the notice of lis pendens had a negative impact on the lenders' willingness to loan funds. To refinance the mortgage on the Waterfront Property, Nadolski will try to secure a capital loan from GMAC on his car dealership. The interest rate on the GMAC loan may range between 8% to 10%.

21. Jason Turkish and William Turkish are Plaintiff's managing partners. William Turkish and Francine Turkish held a purchase contract on condominium unit 241 to be built on Defendant's Waterfront Property. When Defendant agreed to cancel the purchase contract, Defendant returned the security deposit and agreed that Plaintiff could enter a purchase contract for condominium unit 244. To obtain a lower contract price on condominium unit 244, Plaintiff agreed to invest $400,000 in the Commercial Property.

22. During 2007 and 2008, Jason Turkish was involved in numerous discussions with Bayonne about refinancing the Waterfront Property. Jason Turkish contends that one of Bayonne's members stated it would be impossible to refinance the mortgage on the Waterfront Property in 2009. According to Jason Turkish, Bayonne concluded it was impossible to refinance the property because Bayonne was unable to sell the condominium units and the development project was winding down.

## CONCLUSIONS OF LAW

A lis pendens as the jurisdiction, power, or control a court acquires over property involved in pending litigation. Med. Facilities Dev., Inc. v. Little Arch Creek Prop., 675 So.2d 915, 917 (Fla. 1996) (citation omitted). The purpose of a lis pendens is to notify prospective purchasers, creditors, and other third parties of the fact that there is a current suit involving the property's title. Am. Legion Cmty. Club v. Diamond, 561 So.2d 268, 269 n.2 (Fla. 1990) (citation omitted).

A notice of lis pendens which is not based on a duly recorded document or construction lien is governed by Fla. Stat. § 48.23(3). Section 48.23(3) authorizes a trial court to require the posting of a bond when the property holder can show damages will likely result in the event the notice of lis pendens is unjustified. Med. Facilities Dev., Inc., 675 So.2d at 917. The decision of whether a lis pendens bond should be posted rests with the discretion of the trial judge. Id. at 917-18.

The amount of a lis pendens bond should bear a reasonable relationship to the amount of damages which the property holder demonstrates will likely result if it is later determined that the notice of lis pendens was unjustified. Id. at 918 n. 2. The burden is on the party seeking the bond to demonstrate by clear evidence that the damage it will likely suffer is due to the lis pendens. See Hotel Europe, Inc., v. Aouate, 766 So. 2d 1149, 1152 (Fla. 3d DCA 2000) (property owner

demonstrated by clear evidence that property could not be sold because of the lis pendens). Furthermore, the party seeking the bond must prove the amount of damages likely resulting from the lis pendens by "competent substantial evidence." Real Invs., LLC, v. Oaks Group, Inc., 973 So.2d 643, 644 (Fla. 4th DCA 2008). Attorneys' fees incurred in removing an unjustified lis pendens are recoverable damages. S and T Builders v. Globe Prop., Inc., 944 So.2d 302, 305-06 (Fla. 2006).

Bayonne argues that it will likely sustain damages of approximately $340,450.00 as a result of the notice of lis pendens.[4] Specifically, Bayonne seeks a total of $229,695.00 in attorneys' fees and costs it has incurred and will likely incur in defending the equitable lien claim, dissolving the notice of lis pendens, and prosecuting the slander of title claim. Bayonne also requests $8,450.00 in expert witness fees in connection with the pending motion. Bayonne further asserts it will likely incur consequential damages of at least $102,000.00 to obtain refinancing on the Waterfront Property.

Plaintiff responds that Defendant has failed to demonstrate that the notice of lis pendens will likely cause any damage. In reference to attorneys' fees and costs, Plaintiff asserts Defendant has not established that the requested amount of attorneys' fees and costs is reasonably related to the notice of lis pendens. Plaintiff also contends that Bayonne has not shown that the notice of lis pendens precluded Bayonne from refinancing the loan on the property.

**I.      Attorneys' Fees and Costs**

The computation of reasonable attorneys' fees is ultimately an exercise of judgment because

---

[4] If Bayonne borrows $600,000.00 for two years at an interest rate of 10%, Bayonne asserts it will incur approximately $358,450.00 in damages.

there is no precise rule or formula for reaching these determinations. Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (citation omitted). In determining fee awards, a court may consider its own knowledge and experience concerning reasonable and proper fees. Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (citation omitted). The burden of proving entitlement to the recovery of attorneys' fees rests with the applicant. Webb v. Bd. of Ed. of Dyer County, 471 U.S. 234, 242 (1985).

An attorney's reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience, and reputation. Norman, 836 F. 2d at 1299. According to Andersen, an hourly rate of $375.00 for the two partners and an hourly rate of $225.00 for the work of two fourth-year associates are reasonable in light of their skill, experience, and reputation. Plaintiff does not dispute the reasonableness of the hourly rates charged by Bayonne's counsel.[5]

Plaintiff asserts that Bayonne failed to segregate the attorneys' fees and costs related to the notice of lis pendens from the fees and costs associated with the defense of the lawsuit as a whole. Plaintiff argues that Defendant's invoices and proposed litigation budget are too vague to determine specific tasks. This objection has merit.

   A.   Invoices for Fees and Costs from June 1, 2009 to November 15, 2009

Bayonne seeks the recovery of $42,010.00 in attorneys' fees and $2,110.00 in costs related to the notice of lis pendens.

---

[5] Plaintiff contends that Defendant's request for attorneys' fees and costs of approximately $230,000.00 is unreasonable when compared to Plaintiff's equitable lien claim of $400,000.00. However, the amount of Plaintiff's claim is not the focus in determining the amount of the lis pendens bond. The issue is whether Defendant has demonstrated the amount of damages, including attorneys' fees and costs, that will likely result from a wrongly filed notice of lis pendens.

A review of Norton Hammersley's invoices for legal work from June 1, 2009 to November 15, 2009 includes numerous entries of block billing, vague descriptions, and redacted descriptions.[6] For instance, on June 14, 2009, attorney Hammersley billed 1.9 hours for "Work on motion to dissolve lis pendens, motion to dismiss" (Def. Ex. 12, p. 2). In another time entry dated September 8, 2009, attorney Hammersley blocked billed 1.7 hours for the following tasks: (1) "telephone conference with Mr. Nadaolski regarding ___", (2) "telephone conference with Mr. Owen regarding the same issues," and (3) "telephone conference with Mr. Owen regarding ___" (Def. Ex. 12, p. 11). On June 9, 2009, attorney Owen blocked billed 2.7 hours for the following tasks: (1) "drafting letter" to Plaintiff's counsel, (2) "drafting e-mail to Mr. Johnson re: promissory note," (3) "review public records for maturity date on mortgage," and (4) a redacted description of work (Id.).

Of the approximately 170 time entries contained in the invoices, at least half of the entries are block billed (Def. Ex. 12). Additionally, there are at least 42 entries in which the description of work was entirely or partially redacted (Id.). Although Bayonne alleges that the redactions prevent the disclosure of confidential or privileged information, the redactions preclude any meaningful analysis of the hours billed. The invoices also contain vague descriptions of work related to the general defense of the case, including work associated with the case management report, Rule 26 disclosures, discovery requests and responses, motions to compel discovery, motion for protective order, LeFevre's bankruptcy filing, motions to dismiss, and prosecution of the claim for slander of title. At least 100 of the 170 time entries contain descriptions of work related to the general defense of the case (Def. Ex. 12). There was no effort to segregate the time entries by claim and match the

---

[6] Defendant's counsel's entries frequently include general descriptions such as "review," "prepare," "work on," "conference with," "instructions," and "update" (Def. Ex. 12).

hours billed to the specific tasks related to the notice of lis pendens.

In light of Defendant's block billing and vague description of the work performed, it is difficult to ascertain the number of billable hours incurred as a result of the notice of lis pendens. The court will not parse through the time entries and "engag[e] in the pick and shovel work necessary to make a more precise determination" of reasonableness of the requested fees. <u>Kenny A. ex rel. Winn v. Perdue</u>, 532 F.3d 1209, 1220 (11th Cir. 2008). It is Defendant's burden to show that the hours claimed were reasonably related to the lis pendens. Accordingly, based upon a representative sampling of Defendant's time entries as noted above, an across-the-board reduction of fifty percent to the hours billed is warranted. <u>See</u> <u>Access for the Disabled, Inc. v. Missouri Mart, Inc.</u>, No. 8:05-CV-392-T-23MSS, 2006 WL 5432711, at *2 (M.D. Fla. Dec. 7, 2006) (court reduced fees by fifty percent based on extrapolation from sample of time entries). Applying this reduction, Defendant's attorneys' fees incurred between June 1, 2009 and November 15, 2009 are reduced from 42,010.00 to $21,005.00.

Plaintiff also seeks recovery of expenses related to the notice of lis pendens. Specifically, Plaintiff seeks $2,109.45 in costs incurred for computer-aided legal research, long-distance telephone calls, photocopies, postage, and miscellaneous cash reimbursements. Given the vague descriptions of these expenses, it is difficult to determine whether these costs were related to the notice of lis pendens. The court declines to review the time entries and case history to match the expenses billed to specific tasks related to the lis pendens. Consequently, Defendant has failed to establish that these expenses were incurred as a result of the notice of lis pendens.

    B.    <u>Defendant's Proposed Litigation Budget After November 15, 2009</u>

Bayonne estimates that, after November 15, 2009, it will incur $185,575.00 in attorneys'

fees and costs related to the equitable lien claim and notice of lis pendens (Def. Ex. 15). Defendant estimated $18,000.00 for billable hours relating to the hearing on the motion to require lis pendens bond. Specifically, Bayonne budgeted $15,000.00 for two associates expending thirty-four (34) combined hours and attorney Hammersley spending 20 hours to prepare for the hearing (Def. Ex. 15). Bayonne anticipates that attorney Hammersley and an associate will spend five (5) hours each on the presentation of evidence and argument at the hearing (Id.). The remaining litigation budget of $167,575.00 is allocated to work on the general defense of the case.[7]

Upon review of Bayonne's proposed litigation budget, the court finds that Defendant will likely incur attorneys' fees of $18,000.00 and $8,450.00 in expert witness fees as a result of the notice of lis pendens. These fees are directly related to the hearing on Defendant's motion to file a lis pendens bond.

However, Bayonne has not carried its burden of proof regarding the alleged damages of $167,575.00 set forth in the proposed litigation budget. Bayonne failed to separate the costs associated with defending the equitable lien count from the costs necessary to defend the other eleven counts in the amended complaint. Although Bayonne contends the equitable lien claim is

---

[7] For work performed after November 15, 2009, Defendant lists the following tasks: (1) review of order granting motion to dismiss amended complaint, review of second amended complaint, file answer/motion to dismiss second amended complaint, (2) draft counterclaim for slander of title, review and respond to motion to dismiss, review order denying motion to dismiss, review answer of counterclaim, (3) prepare discovery, (4) respond to discovery, (5) take and defend depositions, (6) court reporter fees and deposition transcripts, (7) file motions to compel and motions for protective order, (8) prepare motions for summary judgment, (9) respond to motion for summary judgment, (10) prepare for and participate in mediation, (11) prepare and attend final pretrial conference, (12) prepare jury instructions, (13) draft trial brief, (14) prepare proposed jury verdict form, (15) prepare Rule 26(a)(3) disclosure, (16) prepare for trial, and (17) present evidence and argument at trial (Def. Ex. 15).

intertwined with the fraud and misrepresentation claims, if the equitable lien claim is dismissed, the remaining counts in the amended complaint could proceed to trial. Likewise, to defend the equitable lien claim and discharge the notice of lis pendens, Bayonne is not required to file a counterclaim for slander of title, conduct discovery on all the counts, or file and respond to dispositive motions addressing all the counts in the amended complaint. Thus, the court finds that, Defendant has failed to establish that is will likely incur $167,575.00 in damages after November 15, 2009 as a result of the notice of lis pendens.

  C. <u>Defendant's Efforts to Obtain Refinancing</u>

Bayonne contends that as a result of Plaintiff's notice of lis pendens, it has been unable to refinance the mortgage on the Waterfront Property. Bayonne asserts that it attempted to obtain refinancing from eleven commercial lenders but the disclosure of the notice of lis pendens had a negative impact on the lenders' willingness to loan funds. Bayonne argues that the notice of lis pendens prevented the purchase of title insurance on the Waterfront Property. In order to obtain a loan on the property, Bayonne contends it will have to borrow $600,000.00 at an interest rate of at least 8.5% to establish a cash collateral fund. Furthermore, Bayonne assumes the litigation will last two years and asserts it will likely incur $51,000.00 in interest payments per year, for a total of $102,000.00 for interest payments on the $600,000.00 loan.

A notice of lis pendens may prevent a property owner from selling or mortgaging the property. <u>Med. Facilities Dev., Inc.</u>, 675 So.2d at 917. The measure of damages from a wrongly filed notice of lis pendens may include consequential damages. See <u>Mitchell v. Metro. at Lake Eola, LLC</u>, 947 So 2d. 1263, 1264 (Fla. 5th DCA 2007) (citation omitted). In determining the amount of a lis pendens bond, the changing conditions in the real estate market may affect the

13

amount of the bond. Levin v. Lang, 994 So.2d 445, 447 (Fla. 3d DCA 2008) (citation omitted).

Here, Bayonne has not established that the notice of lis pendens prevented it from obtaining a new loan. Bayonne offered no evidence from Comerica Bank or other lenders regarding Bayonne's attempts to obtain refinancing of the existing mortgage. Although Pitchford testified it was his "understanding" that the Comerica Bank will refinance the mortgage on the property if the notice of lis pendens is discharged, his testimony is not fully persuasive. There is no testimony that Pitchford communicated with Comerica Bank regarding Bayonne's attempt to obtain refinancing. Furthermore, Pitchford admitted that he had no idea whether other factors influenced the lenders' decision not to loan funds to Bayonne. Indeed, there are numerous factors which may have impacted Bayonne's inability to secure new financing, including stricter credit requirements for commercial loans, the deterioration in financial market conditions, Defendant's July 2009 default, the vacant and undeveloped nature of the property, and Bayonne's credit worthiness. Thus, Defendant has not demonstrated that, as a result of the notice of lis pendens, it will likely incur consequential damages of annual interest payments related to refinancing the mortgage on the Waterfront Property.

## CONCLUSION

Bayonne has demonstrated that it will likely incur total damages of $47,455.00 if it is later determined that the notice of lis pendens was unjustified. Specifically, Bayonne has established the following damages: (1) $21,005.00 in attorneys' fees incurred between June 1, 2009 and November 15, 2009, (2) $18,000.00 in attorneys' fees related to the hearing on Defendant's motion to file a lis pendens bond, and (3) $8,450.00 in expert witness fees.

It is therefore **RECOMMENDED** that:

(1) Defendant's **Motion to Require Plaintiff to Post a Bond** (Dkt. 51) and Defendant's

14

**Emergency Supplement to Motion to Require Plaintiff to Post a Bond** (Dkt. 84), be **GRANTED IN PART** and Plaintiff be required to post a lis pendens bond in the amount of $47,455.00.

Dated: March 8, 2010

ELIZABETH A JENKINS
United States Magistrate Judge

Case No.: 8:09-CV-551-T-17EAJ

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636 (b)(1); Local Rule 6.02, M.D. Fla.