UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BCJJ, LLC, etc.,

        Plaintiff,

v.                              CASE NO. 8:09-CV-551-T-17EAJ

THOMAS J. LEFEVRE,
etc., et al.,

        Defendants.

_____/


ORDER


    This cause is before the Court on:

    Dkt. 152   Motion to Dismiss Second Amended Complaint
    Dkt. 166   Response

    The Second Amended Complaint (Dkt. 148) is a multi-count,
multi-defendant complaint.  Plaintiff BCJJ, LLC ("BCJJ") has
asserted the following counts against Defendant M & I Marshall &
Ilsley Bank ("M & I"):

        Count II        Sec. 10(b), Rule 10b-5
        Count III       Ch. 517.301, Fla. Stat.
        Count IV        Fraudulent Inducement
        Count V         Negligent Misrepresentation
        Count VI        Aiding and Abetting Fraud

I.  Background


    On April 3, 2006, Plaintiff BCJJ entered into a Contract for
Purchase and Sale with Bayonne Development, LLC for the purchase
of Unit 241 in Grande Bay Condominium.  On March 15, 2007,
Defendant LeFevre approached William Turkish and Jason Turkish to
inquire whether BCJJ was interested in investing $400,000 in

Case No. 8:09-CV-551-T-17EAJ

Bayonne Investments, LLC, owner of the Commercial Property next
to the Waterfront Property on which Grande Bay Condominiums were
planned.  Defendant LeFevre represented that Bayonne Investments,
LLC owned the Commercial Property, was in default on its
mortgage, and required a cash infusion to refinance.  (Dkt. 148,
par. 19).  Plaintiff declined, due to the state of the first
mortgage on the Commercial Property.  (Dkt. 148, par. 20).  On
March 24, 2007, Thomas LeFevre, accompanied by Evan Berlin,
approached William Turkish, managing member of BCJJ, LLC to
inquire whether BCJJ would make a $400,000 investment in Bayonne
Investments, LLC in exchange for additional security and an
upgrade to a more expensive condominium unit in Grande Bay
Condominium.  Based on the representations of Defendant Lefevre
and Defendant Berlin, Plaintiff BCJJ agreed to the investment
proposal (Dkt. 148, par. 21).  Defendants LeFevre, LeFevre Trust
and Berlin Law Firm also provided a balance sheet showing the
total liabilities and equity in Bayonne Investments, LLC as of
March 27, 2007, and an appraisal of the Commercial Property dated
November 10, 2006, directed to M & I Bank, the mortgage holder.
On March 27, 2007, Plaintiff BCJJ, LLC closed on this investment
transaction, in which Plaintiff invested $400,000 in Bayonne
Investments, LLC through his purchase of seven Investment Units
in Bayonne Investments, LLC.  As security for the investment,
BCJJ was provided with an upgrade to a more expensive unit in
Grande Bay Condominium.  In the event the condominium upgrade did
not come to fruition, and as an alternative security for BCJJ's
investment, BCJJ was provided with membership units in TT, LLC
and GLRS, LLC, both of which owned other real estate in Sarasota,
FL., to secure the repayment of $400,000 to Plaintiff.  Upon
consummation of the investment transaction, the funds from BCJJ
were wired from the Berlin Law Office's trust account to

2

Case No. 8:09-CV-551-T-17EAJ

Defendant M&I, the owner and holder of the mortgage on Bayonne
Investments, LLC's development site, the Commercial Property.

Plaintiff BCJJ alleges that Plaintiff later learned that the
appraisal provided to Plaintiff was substantially inflated, due
to the restrictions of the Joint Development Agreement, which
burdened the Commercial Property and the Waterfront Property, and
which was superior to the mortgage of Defendant M & I.   (Dkt.
148, par. 26).   Plaintiff further alleges that, prior to BCJJ's
investment of $400,000, Karen Wild, of M & I Bank, assured
Plaintiff that $400,000 would successfully capitalize the
refinancing of the Commercial Property.   (Dkt. 148, par. 27).

Plaintiff BCJJ, LLC alleges that in April, 2008, Plaintiff
learned from Evan Berlin that the investment transaction was a
deliberately orchestrated sham, in that LeFevre and LeFevre Trust
were never authorized to pledge their membership units in GLRS,
and the conditions required by TT's operating agreement were
never satisfied.   The security pledged to Plaintiff BCJJ as
consideration for BCJJ's investment in Bayonne Investments, LLC
was completely defective, resulting in an a completely unsecured
obligation to BCJJ by LeFevre and LeFevre Trust.

The Court previously granted in part and denied in part
Defendant M & I's Motion to Dismiss (Dkt. 136), after which
Plaintiff filed the Second Amended Complaint.   The subject
appraisal (Dkt. 148-10) is attached to the Second Amended
Complaint, along with other documents relevant to the
transaction.

3

Case No. 8:09-CV-551-T-17EAJ

II.   Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Id., at 570.   A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.   Two working principles underlie Twombly.  First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id., at 556.  A court considering a motion to dismiss may begin by identifying allegations that, because they are mere legal conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955-1956 (2009)(quoting Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

Case No. 8:09-CV-551-T-17EAJ

III.  Discussion

A.  Count II - Section 10(b), Rule 10b-5

The Court previously granted dismissal because the Amended
Complaint's allegations did not meet the heightened pleading
standard for scienter, and did not adequately plead loss
causation.

Defendant M & I Marshall & Ilsley Bank moves for dismissal
of the Second Amended Complaint as to M & I with prejudice.

Plaintiff BCJJ opposes Defendant M & I's Motion.  Plaintiff
argues that Plaintiff has included allegations that Defendant M &
I actively solicited Plaintiff's investment, and disclosed the
substance of the alleged false appraisal in the conference call
which took place prior to the closing of Plaintiff's transaction
with Bayonne Investments, LLC.

A securities fraud claim under Section 10(b) and Rule 10b-5
includes the following elements: 1) a material misrepresentation
or omission; 2) made with scienter; 3) a connection with the
purchase or sale of a security; 4) reliance on the misstatement
or omission; 5) economic loss and 6) a causal connection between
the material misrepresentation or omission and the
loss....Instituto de Prevision Militar v. Merrill Lynch, 546 F.3d
1340, 1352 (11th Cir. 2008).

In the Second Amended Complaint, Plaintiff BCJJ summarizes
the specific misrepresentations made to Plaintiff in paragraphs
29-35.  Plaintiff alleges that Defendant M & I falsely

Case No. 8:09-CV-551-T-17EAJ

represented the value of the property owned by Bayonne
Investments, LLC by presenting BCJJ with an appraisal which
failed to account for substantial private restrictions arising
from a Joint Development Agreement on the Commercial Property in
favor of the adjoining Waterfront Property.  Plaintiff alleges
that Defendant M & I commissioned the appraisal.  Plaintiff
further alleges that the substance of the appraisal was provided
to Plaintiff in a conference call which took place between March
15, and March 27, 2007, in which Karen Wild, representative of M
& I, Evan Berlin, Tom LeFevre and Jason Turkish, on behalf of
Plaintiff, participated.  Plaintiff further alleges that the
discussion centered on how much money Bayonne Investments, LLC
owed on its mortgage on the Commercial Property, the balance of
the mortgage relative to the value of the property, and the
requirements of M & I to recapitalize the loan.  Plaintiff
alleges that Karen Wild, Tom LeFevre and Evan Berlin told Jason
Turkish that Tom LeFevre had already negotiated a mortgage
modification on behalf of Bayonne Investments, LLC, and M & I
required an additional $400,000 to recapitalize the loan.
Plaintiff further alleges that Karen Wild, Tom LeFevre and Evan
Berlin knew that the appraisal did not account for the Joint
Development Agreement but did not disclose that fact to Jason
Turkish.  Plaintiff alleges that Defendant LeFevre provided the
appraisal to Plaintiff.


1.  Scienter

    Plaintiff's claim is based on the alleged false appraisal
and the direct assurance that $400,000 would successfully
recapitalize the mortgage loan.  Plaintiff BCJJ alleges that
Defendant M & I knew the misrepresentations were false when made,

6

Case No. 8:09-CV-551-T-17EAJ

or was reckless in not recognizing that the appraisal was false.
Severe recklessness is limited to those highly unreasonable
omissions or misrepresentations that involve not merely simple or
even inexcusable negligence, but an extreme departure from the
standards of ordinary care, and that present a danger of
misleading buyers or sellers which is either known to the
defendant or is so obvious that the defendant must have been
aware of it.  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1284
(11th Cir. 1999).

   To determine a motion to dismiss for failure to allege facts
which give rise to a strong inference of scienter, the Court
considers whether all of the facts alleged, taken collectively,
give rise to a strong inference of scienter i.e. the intent to
deceive, defraud or manipulate, or severe recklessness.  The
Court must consider plausible nonculpable explanations for the
defendant's conduct, as well as inferences favoring the
plaintiff.  When the allegations are accepted as true and taken
collectively, the Court must determine whether a reasonable
person would deem the inference of scienter at least as strong as
any opposing inference.  See Mizzaro v. Home Depot, 544 F.3d
1230, 1238-39 (11th Cir. 2008).  Scienter must be found with
respect to each defendant, and with respect to each alleged
violation or the statute.  Phillips v. Scientific-Atlanta, Inc.,
374 F.3d 1015, 1017-18 (11th Cir. 2004).

   Defendant M & I had a commercial lending relationship with
Defendant Bayonne Investments, LLC; Defendant M & I held the
mortgage on the Commercial Property.  While lending procedures
may vary among lenders, the core basics are the same.  When a
lending institution lends money in a mortgage transaction, the

Case No. 8:09-CV-551-T-17EAJ

lender typically obtains an appraisal.  The appraisal is for the
benefit of the lender.  The purpose of the appraisal is to reduce
the lender's risk associated with the loan; the appraisal
provides an objective opinion of the value of the collateral.  In
the event of default, the loan documents typically provide that
the lender can foreclose and sell the property to recover its
loan.

     Defendant M & I's conduct as to Bayonne Investments, LLC,
owner of the Commercial Property, is subject to statutory and
common law, the loan documents for the transaction, and
requirements of banking industry custom.  The appraisal report
states that it is made in compliance with the Uniform Standards
of Professional Appraisal Practice adopted by the Appraisal
Institute, that it is a self-contained appraisal, and "[t]he
purpose of this report is to estimate the market value of the
subject property for underwriting a mortgage loan."  The Court
notes that the appraisal report is dated November 10, 2006; the
appraisal was commissioned in connection with Defendant M & I's
loan to Bayonne Investments, LLC at that time.   The appraisal
was obtained months before any investment proposal was made to
Plaintiff BCJJ in March, 2007.  Assuming that Defendant M & I
disclosed the substance of the appraisal to Plaintiff BCJJ in
March, 2007, Defendant M & I disclosed what Defendant M & I
relied on in proceeding with the loan transaction with Bayonne
Investments, LLC.

     In the Second Amended Complaint, Plaintiff BCJJ alleges that
Defendant LeFevre told Plaintiff BCJJ that the mortgage on the
Commercial Property was in default on March 15, 2007, when
Defendant LeFevre first inquired about an investment of $400,000

8

Case No. 8:09-CV-551-T-17EAJ

from Plaintiff BCJJ.    Plaintiff BCJJ declined at that time.
Defendant LeFevre and Defendant Berlin approached Plaintiff BCJJ
again on March 24, 2007, with a different proposal, which
Plaintiff accepted.   Something changed Plaintiff's decision to
invest in Bayonne Investments, LLC between March 15, 2007 and
March 24, 2007.  However, Plaintiff knew on March 15, 2007 that
the mortgage on the Commercial Property was in default and
Defendant was seeking a cash infusion of $400,000 to refinance.

     In ruling on a motion to dismiss, the Court accepts the
truth of all well-pleaded factual allegations.  In the Second
Amended Complaint, Plaintiff BCJJ does not allege that appraisal
was disclosed in contemplation of a transaction between Defendant
M & I and Plaintiff BCJJ, nor does Plaintiff BCJJ allege that
Defendant M & I knew the terms of Defendant Bayonne Investment,
LLC's offer to Plaintiff BCJJ in exchange for Plaintiff's
investment of $400,000 in Defendant Bayonne Investments, LLC.
Plaintiff does not allege that there was any discussion during
the conference call of any proposed sale of securities to
Plaintiff, or that Defendant M & I advised Plaintiff to make an
investment; the subject of the discussion was the mortgage on the
Commercial Property, the balance of the mortgage relative to the
value of the Commercial Property, and Defendant M & I's
requirements to recapitalize the loan.   The appraisal report
looked back to November, 2006 and revealed what Defendant M & I
relied on in its lending decision.   Assuming that Defendant's
representative, Karen Wild, directly assured Plaintiff that
$400,000 would successfully capitalize the refinancing of the
mortgage on the Commercial Property at some time before March 27,
2007, the closing date, Plaintiff already knew that the mortgage
was in default and that Defendant Lefevre sought $400,000 to

9

Case No. 8:09-CV-551-T-17EAJ

refinance on March 15, 2007.  Any assurance offered by Karen Wild
that $400,000 would successfully capitalize the refinancing of
the mortgage on the Commercial Property was not new information.
However, Plaintiff had declined the first investment proposal
while Plaintiff had knowledge of the default and the amount
required to refinance. Plaintiff accepted the investment proposal
only when a different proposal was made.  In the Second Amended
Complaint, Plaintiff BCJJ does not allege that the loan on the
Commercial Property was not refinanced.  Plaintiff alleges that,
after Plaintiff closed on the transaction, the funds were later
transmitted to Defendant M & I Bank.  The Court does not
understand how Karen Wild's assurance that $400,000 would
successfully recapitalize Defendant M & I's loan to Bayonne
Investments, LLC is a misrepresentation.

     The Court notes that Plaintiff BCJJ alleges that Defendant M
& I knew that the March 27, 2007 balance sheet provided to
Plaintiff BCJJ grossly understated the liabilities of Bayonne
Investment, LLC (Dkt. 148, par. 91).  However, Plaintiff BCJJ
makes no factual allegations of any participation by Defendant M
& I in the closing of the transaction between Plaintiff BCJJ and
Defendant Bayonne Investments, LLC, other than the telephone
conference involving the amount of money Bayonne Investments, LLC
owed on its mortgage, the balance of the mortgage relative to the
value of the property, and Defendant M & I's requirements to
recapitalize the loan.  Even if Defendant M & I had such
knowledge, it does not transform the arms-length relationship
between Defendant M & I, Defendant Bayonne Investments, LLC and
Plaintiff BCJJ into something other than an arms-length
relationship.  Defendant M & I's lending relationship with
Bayonne Investments, LLC was established before Defendant Lefevre

10

Case No. 8:09-CV-551-T-17EAJ

made any proposal to Plaintiff, and the topics discussed in the conference call are typical of those within the lending relationship.

After considering all the facts alleged in the Second Amended Complaint, the Court concludes that a reasonable person would not deem the inference of scienter to be as strong as other, nonculpable explanations.

2.  Loss Causation

Defendant M & I argues that Plaintiff's allegations as to loss causation are insufficient.

Plaintiff BCJJ argues that Plaintiff's factual allegations as to loss causation are sufficient, in reliance on In Re PSS World Medical, Inc. Securities Litigation, 250 F.Supp.2d 1335, 1343 (M.D. Fla. 2003).

In In Re PSS World Medical, Inc., the plaintiffs contended that they adequately pleaded "loss causation" by alleging that as a result of the defendants' fraudulent statements of inaccurate facts, the market price of PSSI stock was artificially inflated during the Class Period, ultimately causing the plaintiffs' injury.  In the plaintiffs' view, the fact that the stock price was artificially inflated on the date they purchased the stock established loss causation for the purposes of ruling on a motion to dismiss, since the truth regarding PSSI's financial reports would have resulted in a proper valuation of their investment. Plaintiffs contended that they properly alleged facts demonstrating an intentional or at least severely reckless course

11