UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BCJJ, LLC, etc.,

     Plaintiff,

v.                       CASE NO. 8:09-CV-551-T-17EAJ

THOMAS J. LEFEVRE,
etc., et al.,

     Defendants.

_____/

ORDER

This cause is before the Court on:

| Dkt. 160 | Motion to Dismiss - Evan Berlin |
| Dkt. 161 | Motion to Dismiss - Berland Investments, LLC |
| Dkt. 162 | Motion to Dismiss - Berlin Law Firm P.A. |
| Dkt. 170 | Response |
| Dkt. 174 | Motion for Leave to Reply |

The Second Amended Complaint (Dkt. 148) is a multi-count, multi-defendant complaint. Plaintiff BCJJ, LLC asserts the following claims against Defendants Evan Berlin, Berland Investments, LLC and Berlin Law Firm P.A.:

| Count I | 15 U.S.C. Sec. 1703(a)(2) |
| Count II | Sec. 10(b), Rule 10b-5 |
| Count III | Ch. 517.301, Fla. Stat. |
| Count IV | Fraudulent Inducement |
| Count V | Negligent Misrepresentation |
| Count VI | Aiding and Abetting Fraud |
| Count X | Legal Malpractice/Negligence |
| Count XI | Ch. 501.201, Fla. Stat. |

In the Second Amended Complaint, Plaintiff BCJJ, LLC alleges that Defendant Evan Berlin is an individual, is president of Defendant Berlin Law Firm, P.A., and is a manager of Defendant Berland Investments, LLC, and Defendant TT, LLC. Plaintiff BCJJ

Case No. 8:09-CV-551-T-17EAJ

alleges that at all relevant times, Defendant Berlin acted as an
agent of Defendants Berland Investments, LLC, TT, LLC and Bayonne
Investments, LLC.

Plaintiff BCJJ alleges Defendant Berland Investments, LLC is
a member of Bayonne Investments, LLC, and at all relevant times
acted as an agent of Bayonne Investments, LLC.

Defendant Berlin moves to dismiss as to Counts II, III, IV,
V and VI.  Defendant Berland Investments, Inc. moves to dismiss
as to Counts II, III, IV and V.  Defendant Berlin Law Firm, P.A.
moves to dismiss as to Counts II, III and VI.

Defendant Berlin incorporates Sections I, II, and III of
Defendant's previous Motion to Dismiss (Dkt. 46), as well as any
portions of the Motion to Dismiss as to Counts II, III, IV, V and
VI.  Defendants Berland Investments, LLC and Berlin Law Firm,
P.A. incorporate the same portions of the previous Motion to
Dismiss.

I.  Background

On April 3, 2006, Plaintiff BCJJ entered into a Contract for
Purchase and Sale with Bayonne Development, LLC for the purchase
of Unit 241 in Grande Bay Condominium.  On March 15, 2007,
Defendant LeFevre approached William Turkish and Jason Turkish to
inquire whether BCJJ was interested in investing $400,000 in
Bayonne Investments, LLC, owner of the Commercial Property next
to the Waterfront Property on which Grande Bay Condominiums were

2

Case No. 8:09-CV-551-T-17EAJ

planned.  Defendant LeFevre represented that Bayonne Investments, LLC owned the Commercial Property, was in default on its mortgage, and required a cash infusion to refinance.  (Dkt. 148, par. 19).  Plaintiff declined, due to the state of the first mortgage on the Commercial Property.  (Dkt. 148, par. 20).  On March 24, 2007, Thomas LeFevre, accompanied by Evan Berlin, approached William Turkish, managing member of BCJJ, LLC to inquire whether BCJJ would make a $400,000 investment in Bayonne Investments, LLC in exchange for additional security and an upgrade to a more expensive condominium unit in Grande Bay Condominium.  Based on the representations of Defendant Lefevre and Defendant Berlin, Plaintiff BCJJ agreed to the investment proposal (Dkt. 148, par. 21).  Plaintiff BCJJ alleges that Defendant Berlin Law Firm, P.A. e-mailed Plaintiff the documents required to implement Plaintiff's investment in Bayonne Investments, LLC.   Plaintiff alleges that Defendant Berlin and Defendant Berlin Law Firm, P.A. prepared the documents for the direct benefit of Plaintiff BCJJ.  Plaintiff further alleges that, due to Defendant Berlin's involvement in TT, LLC, Berland Investments, LLC and Bayonne Investments, LLC as an investor, the documents were also intended to benefit and did benefit Defendant Berlin personally.  (Dkt. 148, par. 21).

Defendants LeFevre, LeFevre Trust and Berlin Law Firm also provided a balance sheet showing the total liabilities and equity in Bayonne Investments, LLC as of March 27, 2007, and an appraisal of the Commercial Property dated November 10, 2006, directed to M & I Bank, the mortgage holder. On March 27, 2007, Plaintiff BCJJ, LLC closed on this investment transaction, in which Plaintiff invested $400,000 in Bayonne Investments, LLC through his purchase of seven Investment Units in Bayonne

Case No. 8:09-CV-551-T-17EAJ

Investments, LLC.  As security for the investment, BCJJ was
provided with an upgrade to a more expensive unit in Grande Bay
Condominium.  In the event the condominium upgrade did not come
to fruition, and as an alternative security for BCJJ's
investment, BCJJ was provided with membership units in TT, LLC
and GLRS, LLC, both of which owned other real estate in Sarasota,
FL., to secure the repayment of $400,000 to Plaintiff.  Upon
consummation of the investment transaction, the funds from BCJJ
were wired from the Berlin Law Office's trust account to
Defendant M&I, the owner and holder of the mortgage on Bayonne
Investments, LLC's development site, the Commercial Property.

     Plaintiff BCJJ alleges that Plaintiff later learned that the
appraisal provided to Plaintiff was substantially inflated, due
to the restrictions of the Joint Development Agreement, which
burdened the Commercial Property and the Waterfront Property, and
which was superior to the mortgage of Defendant M & I.  (Dkt.
148, par. 26).  Plaintiff further alleges that, prior to BCJJ's
investment of $400,000, Karen Wild, of M & I Bank, assured
Plaintiff that $400,000 would successfully capitalize the
refinancing of the Commercial Property.  (Dkt. 148, par. 27).

     Plaintiff BCJJ, LLC alleges that in April, 2008, Plaintiff
learned from Evan Berlin that the investment transaction was a
deliberately orchestrated sham, in that LeFevre and LeFevre Trust
were never authorized to pledge their membership units in GLRS,
and the conditions required by TT, LLC's operating agreement were
never satisfied.  The security pledged to Plaintiff BCJJ as
consideration for BCJJ's investment in Bayonne Investments, LLC
was completely defective, resulting in an a completely unsecured
obligation to BCJJ by LeFevre and LeFevre Trust.  Plaintiff BCJJ

4

Case No. 8:09-CV-551-T-17EAJ

alleges that Defendant Berlin, who was a member of TT, LLC and, through Berland Investments, LLC was a member of and equity owner in Bayonne Investments, LLC, knew or should have known that Defendants LeFevre and LeFevre Trust had no authority to pledge their membership units.  (Dkt. 148, par. 41).

Plaintiff's failed investment included the following documents, attached to the Amended Complaint:

| | |
|---|---|
| Exhibit A | Contract for Purchase and Sale of Unit 241, Residences at Grande Bay, A Condominium, dated April 3, 2006, between BCJJ, LLC and Bayonne Development, LLC; |
| Exhibit B | Purchase Agreement for Membership Interest dated March 27, 2007, between BCJJ, LLC and Thomas J. LeFevre, as Trustee Of Thomas J. LeFevre Living Trust, and Tom's Friends, LLC; |
| Exhibit C | Unanimous Consent of Members Tom's Friends, LLC permitting assignment of seven Investment Units in Bayonne Investments, LLC to BCJJ, LLC in exchange for payment Of $400,000, signed on March 26, 27, 2007; |
| Exhibit D | Assignment of Membership Interests, dated March 27, 2007, between Tom's Friends, LLC and BCJJ, LLC; |
| Exhibit E | Agreement between Thomas J. LeFevre, as Trustee of Thomas J. LeFevre Living Trust dated October 8, 2001, and/or its successor and assigns, and BCJJ, LLC, and/or its successors and assigns, (undated); |
| Exhibit F | Security Agreement, by Thomas J. LeFevre and as Trustee of the Thomas J. LeFevre Living Trust dated October 8, 2001, ("Borrower") in |

5

Case No. 8:09-CV-551-T-17EAJ

favor of BCJJ, LLC ("Lender") executed on
March 27, 2007;

Exhibit G      Collateral Assignment of Distributions
And Profits by Thomas J. LeFevre,
Individually and as Trustee of the Thomas J.
LeFevre Living Trust dated October 8, 2001
("Borrower") and BCJJ, LLC ("Lender) dated
March 27, 2007;

Exhibit H      Closing Agreement, between Thomas J. LeFevre,
Ind., and as Trustee of Thomas J. LeFevre
Living Trust dated October 8, 2001, and BCJJ,
LLC, pursuant to Purchase Agreement for
Membership Interest ("Contract") Berlin Law
Firm, P.A. ("Closing Agent") to consummate
the closing of the transaction involving the
Contract;

Exhibit I      Balance Sheet, Bayonne Investments LLC, as of
March 27, 2007;

Exhibit J      Appraisal Report of "The Bayonne Development"
dated November 10, 2006,
to Karyn L. Wild, Vice President, Commercial
Lending, M&I Bank;

Exhibit K      Memorandum of Joint Development Agreement,
dated October 12, 2005 between Bayonne
Development LLC, and Bayonne Investments,
LLC, prepared by Evan Berlin, Esq., Berlin
Law Firm, and recorded in Sarasota County
on October 17, 2005;

Exhibit L      Balance Sheet of Bayonne Investments, LLC, as
of May 3, 2007

Exhibit M      E-Mail from Berlin Law Firm to Jason Turkish
dated March 26, 2007 at 6:59 p.m. attaching
the Revised Agreement and the Security
Agreement

Case No. 8:09-CV-551-T-17EAJ

Plaintiff BCJJ's claims relate to the March 27, 2007 transaction between Plaintiff BCJJ and Thomas J. LeFevre, individually, and as Trustee of Thomas J. LeFevre Living Trust, and Tom's Friends, in which Plaintiff purchased seven investment units in Bayonne Investments, LLC.

II.  Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," <u>Id.</u>, at 570.  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u>, at 556.  Two working principles underlie <u>Twombly</u>.  First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. <u>Id.</u>, at 555.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. <u>Id.</u>, at 556.  A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.  When there are well-pleaded factual

Case No. 8:09-CV-551-T-17EAJ

allegations, a court should assume their veracity and then
determine whether they plausibly give rise to an entitlement to
relief.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955-1956
2009)(quoting Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

III.  Discussion

The Court previously granted in part and denied in part
Defendants' Motions to Dismiss (Dkt. 138), with leave to file an
amended complaint.

A.  Count II - Section 10(b), Rule 10b-5

Defendant Berlin previously moved to dismiss because:
1) the First Amended Complaint did not allege active
misrepresentations by Berlin; 2) did not allege securities fraud
with particularity; 3) did not allege facts which gave rise to a
strong inference that Defendant Berlin acted in a severely
reckless manner.

The Court granted he Motion to Dismiss as to Count II, with
leave to file an amended complaint which specified who made
statements, what statements were made, when the statements were
made, and in what capacity the statements were made.

Plaintiff BCJJ amended the First Amended Complaint by
including paragraphs 29 through 35, "Summary of Specific
Misrepresentations Made to BCJJ."  These paragraphs include
Plaintiff BCJJ's allegations as to the conference call in which
the appraisal report on the Commercial Property was disclosed to
Plaintiff, and which Defendant LeFevre's assistant faxed to

8

Case No. 8:09-CV-551-T-17EAJ

Plaintiff. (Dkt. 148, pars. 29, 30). Plaintiff BCJJ has included allegations as to telephone conversations which took place between March 23, 2007 and March 27, 2007, in which Thomas LeFevre, Evan Berlin, William Turkish and Jason Turkish participated. (Dkt. 148, par. 31). Plaintiff BCJJ further alleges that the Berlin Law Firm, P.A. transmitted draft documents which included misrepresentations to Plaintiff BCJJ on March 26, 2008 at 6:59 p.m. (Dkt. 148, par. 32). Plaintiff BCJJ alleges that the misrepresentations were false and Defendants LeFevre and Berlin knew the misrepresentations were false when made. Plaintiff BCJJ further alleges that, during telephone conversations which took place between March 23 and March 27, 2007, Defendants Berlin and LeFevre, acting as members and on behalf of Bayonne Development, LLC and Bayonne Investments, LLC, indicated the substance of Bayonne Investment, LLC's financial condition to William Turkish and Jason Turkish. (Dkt. 148, par. 33). Plaintiff alleges that the written falsified statement of the financial condition of Bayonne Investments, LLC was provided at closing to Plaintiff, on the afternoon of March 27, 2007. (Dkt. 148, par. 34). The documents provided to Plaintiff BCJJ are attached to the Second Amended Complaint.

In the Second Amended Complaint, Plaintiff alleges that Plaintiff BCJJ agreed to the renewed investment proposal based upon the representations of LeFevre and Berlin (Dkt. 148, par. 21). Plaintiff BCJJ alleges that Defendant Berlin suggested that Defendant LeFevre would be able to pledge his membership units in Defendant TT, LLC and GLRS (the former of which Defendant Berlin was the manager)(Dkt. 148, par. 31). Plaintiff also alleges that Defendants LeFevre and Berlin relayed the financial status of these entities to Plaintiff, and represented that the entities

9

Case No. 8:09-CV-551-T-17EAJ

held substantial equity in real estate parcels in Sarasota.
Plaintiff also alleges that Defendants LeFevre and Berlin
represented that they had the authority to secure and would
secure the necessary approvals from the other members of TT and
GLRS for the authority for Defendant LeFevre to pledge his
membership units in those entities to Plaintiff BCJJ to secure
Plaintiff's investment in Bayonne Investments, LLC.  Plaintiff
further alleges that each representation made by Defendants
LeFevre and Berlin was made in their capacities as members and
agents of Bayonne, LLC (formerly Bayonne Development, LLC),
Bayonne Investments, LLC, TT and GLRS.

     In the Second Amended Complaint, Plaintiff BCJJ alleges that
Defendants Berlin, Berland Investments, LLC and Berlin Law Firm,
P.A. made false statements in the Security Agreement and
Collateral Assignment that Defendants LeFevre and Lefevre Trust
were authorized to pledge membership units in TT, LLC and GLRS in
consideration for Plaintiff BCJJ's investment in and purchase of
Investment Units in Bayonne Investments, LLC. (Dkt. 148, par.
65).  Plaintiff BCJJ alleges that Defendants misrepresented the
value of Bayonne Investments, LLC by presenting Plaintiff with an
inflated balance sheet that grossly understated the amount of
Bayonne Investments, LLC's liabilities. (Dkt. 148, par. 65).
Plaintiff further alleges that these Defendants misrepresented
the value of real property owned by Bayonne Investments LLC by
presenting Plaintiff with an appraisal which did not account for
private restrictions arising from a Joint Development Agreement
on the Commercial Property in favor of the adjoining Waterfront
Property. (Dkt. 148, par. 69).

     Plaintiff alleges that, in avowing the representations and

10

Case No. 8:09-CV-551-T-17EAJ

warranties that the necessary consents had been obtained, Defendants Berlin and Berlin Law Firm, as legal counsel familiar with the structure of Bayonne Investments, LLC through Defendant Berlin's ownership interest and involvement in Bayonne Investments, LLC, acted with a high degree of recklessness, or it can reasonably be inferred that Defendants knew that the necessary consents had not been obtained by other Defendants to pledge membership units to Plaintiff BCJJ. (Dkt. 14 par. 68).

Plaintiff BCJJ further alleges that Defendants Berlin, Berlin Law Firm, P.A. and Berland Investments, LLC knew that the March 27, 2007 balance sheet for Bayonne Investments, LLC grossly understated the liabilities. Plaintiff alleges that Defendants Berlin, Berlin Law Firm, P.A. and Berland were familiar with the finances of Bayonne Investments, LLC through their involvement in or with the company. (Dkt. 148, par. 68). Plaintiff alleges that Defendant Berlin included the written falsified statement of the financial condition of Defendant Bayonne Investments, LLC to Plaintiff in materials provided at the closing to Plaintiff.

A securities fraud claim under Section 10(b) and Rule 10b-5 includes the following elements: 1) a material misrepresentation or omission; 2) made with scienter; 3) a connection with the purchase or sale of a security; 4) reliance on the misstatement or omission; 5) economic loss and 6) a causal connection between the material misrepresentation or omission and the loss....Instituto de Prevision Militar v. Merrill Lynch, 546 F.3d 1340, 1352 (11th Cir. 2008).

In Westcoast Group Coast Roofing and Waterproofing, Inc. v.

11

Case No. 8:09-CV-551-T-17EAJ

<u>Johns Manville, Inc.</u>, 2008 WL 2845215   (11th Cir. 2008), the
Eleventh Circuit Court of Appeals explains the requirements of
Rule 9(b):

> To satisfy Rule 9(b)'s "particularity"
> standard, we generally require that a
> complaint identify (1) the precise
> statements, documents or misrepresentations
> made; (2) the time and place of and persons
> responsible for the statement; (3) the
> content and manner in which the statements
> misled the plaintiff; and (4) what the
> Defendant gains by the alleged fraud.
> <u>Ambrosia Coal & Construct. Co.  v. Pages
> Morales</u>, 482 F.3d 1309, 1316-17 (11th
> Cir.2007). <u>See</u> <u>also</u>, <u>U.S. ex rel. Atkins v.
> McInteer</u> 470 F.3d 1350, 1357 (11th Cir.
> 2006). Furthermore, Rule 9(b) requires more
> than conclusory allegations that certain
> statements were fraudulent; it requires that
> a complaint plead facts giving rise to an
> inference of fraud. <u>See U.S. ex rel. Clausen
> v. Laboratory Corp. Of America, Inc.</u>, 290
> F.3d 1301, 1313 (11th Cir. 2002) ("If Rule
> 9(b) is to carry any water, it must mean that
> an essential allegation and circumstance of
> fraudulent conduct cannot be alleged in [ ]
> [a] conclusory fashion....[A] plaintiff is
> not expected to actually prove his
> allegations," but it must offer more than
> "mere conjecture.")....In a case with
> multiple defendants, the complaint should
> contain specific allegations with respect to
> each defendant; generalized allegations
> "lumping" multiple defendants together are
> insufficient. <u>Ambrosia Coal & Construct. Co.</u>,
> 482 F.3d at 1317; <u>Brooks v. Blue Cross and
> Blue Shield of Florida, Inc.</u>, 116 F.3d 1364,
> 1381 (11th Cir. 1997).

Section 10(b) and Rule 10b-5 are further subject to the
requirements of the Private Securities Litigation Reform Act.
Under the Private Securities Litigation Reform Act (15 U.S.C.

Case No. 8:09-CV-551-T-17EAJ

Sec. 78u et seq.)("PSLRA"), any private securities complaint must allege: a) each specific statement alleged to have been misleading and the reasons why the statement is misleading, and (b) with particularity the facts giving rise to a strong inference that the Defendant acted in a severely reckless manner. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007).

Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that defendant must have been aware of it.  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1282 (11th Cir. 1999).  Allegations of motive and opportunity to commit fraud are insufficient to establish scienter under the PSLRA's heightened pleading standard.  Id.

To determine a motion to dismiss for failure to allege facts which give rise to a strong inference of scienter, the Court considers whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter i.e. the intent to deceive, defraud or manipulate, or severe recklessness.  The Court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.  When the allegations are accepted as true and taken collectively, the Court must determine whether a reasonable person would deem the inference of scienter at least as strong as any opposing inference.  See Mizzaro v. Home Depot, 544 F.3d 1230, 1238-39 (11th Cir. 2008).  Scienter must be found with

13

Case No. 8:09-CV-551-T-17EAJ

respect to each defendant, and with respect to each alleged
violation or the statute.  Phillips v. Scientific-Atlanta, Inc.,
374 F.3d 1015, 1017-18 (11th Cir. 2004).

   The Court notes that, in the Eleventh Circuit, the alleged
misrepresentation or omission upon which a plaintiff relied must
have been publicly attributable to the defendant at the time the
plaintiff's investment decision was made.  See Ziemba v. Cascade
Int'l, Inc.. 256 F.3d 1194, 1205 (11th Cir. 2001)(citing
Wright v. Ernst & Young, LLP, 152 F.3d 169 (2d Cir. 1998).  The
Eleventh Circuit has adopted the "bright line" test of the Second
Circuit rather than the "substantial assistance" test of the
Ninth Circuit in distinguishing the liability of a primary actor
from that of a secondary actor in a Section 10(b) claim.  For
liability as a primary actor to attach, an individual must make a
false or misleading statement, and the statement or omission must
be publicly attributed to that specific individual at the time of
public dissemination, such as in advance of the investment
decision, so as not to undermine the element of reliance required
for Section 10(b) liability.  If the statement is not publicly
attributed to the individual, then the statement is merely aiding
and abetting, which is not enough to trigger Section 10(b)
liability. Id.  The critical issue is the investor's
understanding of who made the misleading statement, and in what
context the misleading statement was made.

   In determining whether reliance is reasonable, the following
factors are relevant: 1) the sophistication and expertise of the
plaintiff in financial and security matters; 2) the existing of
long standing business or personal relationships between the
plaintiff and the defendant; 3) the plaintiff's access to

14

Case No. 8:09-CV-551-T-17EAJ

relevant information; 4) the existence of a fiduciary
relationship between owed by the defendant to the plaintiff; 5)
concealment of fraud by the defendant; 6) whether the plaintiff
initiated the stock transaction or sought to expedite the
transaction; and 7) the generality or specificity of the
misrepresentations.  Bruschi v. Brown, 876 F.2d 1526, 1529 (11th
Cir. 1989).


1.  Scienter


A.  Defendant Berlin


     The Court notes Plaintiff's allegations that Defendant
Berlin was a manager of Berland Investments, LLC, which was a
member of Bayonne Investments, LLC, was a manager of Defendant
TT, LLC, and throughout the subject transaction Defendant Berlin
acted as the agent of Defendant Berland Investments, LLC,
Defendant TT, LLC and Defendant Bayonne Investments, LLC.
Defendant Berlin executed the "Assignment of Membership
Interests" (Dkt. 148-4, Exh. D, p. 4) in his capacity as Manager
of Berland Investments, LLC.


     Plaintiff alleges that Defendant Berlin: 1) made statements
disclosing the "false appraisal" designed to induce Plaintiff to
make the investment in Bayonne Investments, LLC; 2) made
intentional or reckless misrepresentations of the financial
condition of Bayonne Investments, LLC in pre-closing telephone
conversations with Plaintiff in which the parties negotiated the
terms of Plaintiff's investment in Defendant Bayonne Investments,
LLC; 3) prepared and transmitted documents containing intentional
or reckless misrepresentations as to the authority of Defendant

15

Case No. 8:09-CV-551-T-17EAJ

LeFevre to pledge his units in GLRS, LLC and Defendant TT, LLC; 4) provided a balance sheet at closing to Plaintiff which reiterated the misrepresentations made to Plaintiff as to the financial condition of Bayonne Investments, LLC.  Plaintiff alleges that the statements were made and actions were taken to convince Plaintiff to invest in Defendant Bayonne Investments, LLC.  Defendant Berlin benefitted from Plaintiff's investment in Defendant Bayonne Investments, LLC based on Defendant's ownership interest in Bayonne Investments, LLC.  The pecuniary value of Defendant Berlin's investment in Bayonne Investments, LLC was preserved because the mortgage was refinanced, and the development project continued.

As to the allegations relating to the "false appraisal," the Court notes that the Joint Development Agreement which Plaintiff contends renders the appraisal "false" was a recorded document available to the public prior to March 15, 2007 when Defendant LeFevre first approached Plaintiff with his investment proposal. Plaintiff BCJJ had actual notice of the existence of the Joint Development Agreement, which is referred to in the agreement to purchase the Grande Bay condominium dated April 4, 2006 (Exh. A, Dkt. 148-1, p. 7).  The absence of any reference to the Joint Development Agreement does not render the appraisal report misleading.  Since Plaintiff had actual notice of the Joint Development Agreement,  Plaintiff could not have relied on the omission of the Joint Development Agreement from the appraisal report in entering into the subject transaction.

As to the alleged misrepresentations of the financial condition of Bayonne Investments, LLC, the Court notes that Purchase Agreement for Membership Interest  (Dkt. 148-2, p. 4)

16

Case No. 8:09-CV-551-T-17EAJ

states:

> Section 4.7 <u>Company Liabilities</u>.  Purchaser
> acknowledges that it is acquiring an interest
> in an entity that has existing/pre-existing
> financial and other obligations/commitments,
> and will have substantial future financial
> and other obligations/commitments (some of
> which are known, and many of which are not
> yet known or have not yet been finalized,
> collectively herein the "Liabilities").  No
> representation has been made to Purchaser
> about any of the Liabilities, the
> amount/nature thereof, or any limitation
> thereon or on the ability of Bayonne to incur
> additional Liabilities hereafter, except as
> set forth herein.  Purchaser agrees to accept
> the Units with full knowledge and
> understanding of the foregoing.

The Agreement also contains an integration clause:

> Section 8.4 <u>Entire Agreement</u>.  This Agreement
> including all Exhibits hereto contains the
> entire agreement among the Parties hereto
> with respect to the subject matter hereof and
> supersedes all prior agreements and
> understandings, oral or written, with respect
> to such matters.

Whatever representations were made to Plaintiff as to the liabilities of Defendant Bayonne Investments, LLC, Plaintiff BCJJ could not have reasonably relied on the representations, based on Section 4.7 of the Purchase Agreement.

The Court is left with the issue of scienter as to the authority of the Defendant LeFevre to transfer the ownership of seven units in "Bayonne Investments, LLC" owned by Tom's Friends,

17