UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BJCC, LLC,**

    **Plaintiff,**

**vs.**                                                  Case No.: 8:09-CV-551-T-17EAJ

**THOMAS J. LeFEVRE, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Before the court are Defendant M&I Marshall & Ilsley Bank's ("M&I") **Motion for Attorneys' Fees and Costs** (Dkt. 231), Plaintiff's **Response** (Dkt. 238), M&I's **Supplemental Support to Motion for Fees and Costs** (Dkt. 249), Plaintiff's **Supplemental Response** (Dkt. 261), and M&I's **Reply** (Dkt. 286).[1] For the reasons explained below, it is **RECOMMENDED** that M&I's motion be granted in part and denied in part.

## Background

To facilitate Plaintiff's decision to invest in the commercial property at issue, Defendants provided Plaintiff with: (1) a balance sheet showing the total liabilities and equity of Defendant Bayonne Investments, LLC ("BI"); and (2) a November 2006 appraisal of the commercial property, which M&I commissioned as part of the original lending process. Also, prior to closing on the $400,000 investment, the parties participated in a conference call at which they discussed: (1) the amount that BI owed to M&I on the mortgage; (2) the balance of the mortgage relative to the value

---

[1] M&I's motion has been referred to the undersigned for a report and recommendation (Dkt. 243).

of the property; (3) the substance of the November 2006 appraisal; and (4) M&I's requirements to refinance the loan. During the conference call, M&I's vice president, Karen Wild, assured Plaintiff that the $400,000 investment was sufficient to properly secure the refinancing.

Plaintiff filed the present suit alleging that the November 2006 appraisal was inflated because it did not account for restrictions on the commercial property imposed by a Joint Development Agreement. Plaintiff also alleged that the balance sheet underestimated BI's liabilities. Plaintiff's first amended complaint asserted the following six counts against M&I:

(1) Count II:   Violation of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5;
(2) Count III :  Violation of the Florida Securities and Investor Protection Act;
(3) Count IV:   Fraudulent Inducement;
(4) Count V:    Negligent Misrepresentation;
(5) Count VI:   Aiding and Abetting Fraud;
(6) Count VIII: Unjust Enrichment;

(Dkt. 15). M&I filed a motion to dismiss the first amended complaint, which was granted in March 2010. Plaintiff filed a second amended complaint reasserting Counts II through VI against M&I. That complaint was subsequently dismissed with prejudice. As a result, M&I filed the present motion seeking an award of attorney's fees and costs as the prevailing party.

## Discussion

M&I seeks an award of $79,559.45 in attorney's fees pursuant to the Florida Securities and Investor Protection Act ("FSIPA") and an award of $2,722.76 in costs pursuant to Rule 54, Fed. R. Civ. P.[2] M&I was represented by three attorneys and two paralegals from the law firm Adams & Reese LLP ("A&R"). M&I's motion includes almost thirty pages of detailed billing records as well

---

[2] In its reply, M&I agreed to reduce the $79,559.45 fee request by $11,403.87 to account for time spent on noncompensable claims. However, as discussed below, the court declines to implement this proposed reduction because it is too little, in comparison to the other claims.

2

as an affidavit from outside counsel attesting to the reasonableness of the amount of time billed and A&R's hourly rates.

Plaintiff argues that M&I's fee application is premature since Plaintiff intends to appeal the court's order dismissing the FSIPA claim and that, in any event, the application should be denied because an award of fees would be unjust. Alternatively, Plaintiff contends that the requested fee award should be reduced to account for time spent on noncompensable claims and to account for duplicative and excessive billing.

Regarding the timeliness of the motion, the court rejects Plaintiff's initial position that the application is premature. Even where an appeal on the merits is taken, it is within the court's discretion to rule on a claim for fees. See Fed. R. Civ. P. 54 advisory committee's note to the 1993 amendments. If the District Judge determines that fees should be awarded, Plaintiff may renew its position that payment of the fees should be stayed pending appeal. This court expresses no opinion as to the merits of a motion to stay.

**1. Entitlement to an Award**

Florida law governs whether a fee award is appropriate under the FSIPA. See Durden v. Citicorp Trust Bank, FSB, 763 F. Supp. 2d 1299, 1303 (M.D. Fla. 2011). Under the FSIPA, "the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust." Fla. Stat. § 517.211(6). In determining whether an award of attorney's fees would be unjust, a court may consider: (1) the relative economic resources of the parties; (2) the public policy behind the statute authorizing an award of attorney's fees; and (3) whether or not the claims made by the non-prevailing plaintiff were substantially justified. Durden, 763 F. Supp. 2d at 1306 n.5.

3

Plaintiff does not dispute that M&I is the prevailing party or that § 517.211(6) entitles a prevailing defendant to an attorney's fee award. Instead, Plaintiff argues that an award of fees would be unjust in light of the disparate resources of the parties – M&I is a large, national bank, and Plaintiff purportedly had all of its assets depleted by the investment transaction at issue. However, Plaintiff has not provided any affidavits or other evidence demonstrating an inability to pay. Furthermore, the disparate resources of the parties does not preclude a fee award where, as here, a plaintiff's FSIPA claim was not substantially justified. <u>See</u> <u>id.</u> at 1305-06 ("Plaintiff has not cited, nor has the Court discovered, any decision holding a fee award against a non-prevailing plaintiff to be unjust where the plaintiff's FSIPA claim was without merit or justification.").

Plaintiff's FSIPA claim was twice dismissed by the court. Even after Plaintiff amended its complaint, the court found that Plaintiff did not, and could not, state a FSIPA claim against M&I as M&I did not sell or solicit the sale of a security to Plaintiff, nor did M&I have any knowledge regarding the terms of the investment transaction at issue, but merely provided accurate information regarding the terms of the loan it made to BI (Dkt. 220 Ex. 1 at 6).

Lastly, Plaintiff claims that an award of fees would be unjust because M&I did not meet its burden of allocating fees between compensable and noncompensable claims and M&I did not produce evidence justifying the requested fee award. However, M&I supported its fee application with affidavits and voluminous billing records. And even where documentation of a fees request is inadequate, the court is not relieved of its obligation to award a reasonable fee. <u>Norman v. Hous. Auth. of Montgomery</u>, 836 F.2d 1292, 1303 (11th Cir. 1988).

In sum, an award of fees to M&I would not be unjust under the circumstances.

**2.    Amount of the Award**

The Florida Supreme Court has adopted the federal lodestar approach to determining reasonable attorney's fees. Fla. Patient's Comp. Fund v. Rowe, 472 So. 2d 1145, 1146 (Fla. 1985). The lodestar is calculated as the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. See Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436). Further, the court itself is "an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Norman, 836 F.2d at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

a. **Reasonableness of the Hourly Rates**

An attorney's reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Id. at 1299 (citations omitted). The fee applicant bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates." Id. The court may consider direct evidence of rates for similar services or opinion evidence about rates as well as its own expertise and judgment. Id. at 1299-1300.

M&I requests compensation for time billed by three attorneys and two paralegals. The

attorneys are: (1) Thomas H. Dart, a partner who billed 114.3 hours at hourly rates varying between $356.25 and $375; (2) Jason Gaskill, who became a partner during the course of the litigation and billed 155.6 hours at hourly rates varying between $255 and $261.25; and (3) Donald A. Mihokovich, a partner who billed .3 hours at a hourly rate of $351.50. The two paralegals billed 8.6 hours at hourly rates of $133 and $147.25.

M&I's fee application includes an affidavit from Michael R. Carey, a Florida attorney with over thirty-two years of commercial litigation experience, attesting to the reasonableness of the time spent on the case and the requested hourly rates. Mr. Carey avers that he reviewed M&I's billing records and considered the factors set out in Rowe and Rule 4-1.5(b) of the Rules Regulating The Florida Bar.[3] As Plaintiff does not challenge the requested hourly rates, and having considered Mr. Carey's affidavit as well as the court's own knowledge and experience, the court finds that the requested hourly rates are reasonable.

b. **Reasonable Number of Hours**

In determining attorney's fee awards, a court should include only those hours reasonably expended on the case and exclude hours that are excessive, redundant, or otherwise unnecessary. Hensley, 461 U.S. at 434. Either an hour-by-hour analysis of the requested hours or an across-the-board reduction can be used if necessary to reduce the number of hours to those deemed reasonable.

---

[3] The factors enumerated in Rowe are essentially the same as those set out in Rule 4-1.5(b). The factors include: (1) the time and labor required, the novelty and difficulty of the question involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the significance of, or amount involved in, the subject matter of the representation and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent. See Rowe, 472 So. 2d at 1150.

Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1351-52 (11th Cir. 2008) (per curiam). An across-the-board reduction is appropriate to account for vague, excessive billing or where billing records are so voluminous that a precise review is impractical. See Villano, 254 F.3d at 1311.

As an alternative to its argument that an award of fees would be unjust, Plaintiff contends that two across-the-board reductions of M&I's fee request are warranted. First, Plaintiff submits that the fee award should be reduced by twenty percent to account for duplicative, excessive billing and blocked-billed entries. Second, Plaintiff submits that the fee award should be reduced by fifty-five percent to account for time spent on non-FSIPA claims.

### i. Block Billing

M&I's billing records contain numerous instances of block billing.[4] For example, a March 2, 2010 entry by attorney Gaskill billed 2.1 hours for reviewing a notice regarding the dissolution of a lis pendens motion, reviewing discovery requests, a teleconference regarding discovery scheduling, and researching the scope of an automatic discovery stay (Dkt. 249 Ex. 1 at 10). And a December 14, 2010 entry by attorney Dart billed .8 hours for reviewing discovery responses, reviewing a deposition notice, reviewing a motion for an automatic stay, and reviewing a motion for an extension of pretrial deadlines (id. at 27).

The practice of block billing is inconsistent with an attorney's obligation to "explain in discrete entries the nature of the work that they want a client or opposing party to pay them hundreds of dollars to perform." Kearney v. Auto-Owners Ins. Co., 713 F. Supp. 2d 1369, 1377-78 (M.D. Fla. 2010) (citation omitted). Block billing unnecessarily complicates review of attorney time sheets and

---

[4] Block billing "refers to the practice of including multiple distinct tasks within the same time entry." Bujanowski v. Kocontes, No. 8:08-CV-0390-T-33EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009).

warrants a reduction of the hours billed. Id.

As a result of the block billing on M&I's time sheets, it is difficult to decipher how much time was spent on each particular task. Because this type of billing precludes an accurate review of the individual entries, a ten percent across-the-board reduction is appropriate. Applying the ten percent reduction reduces the fee award to $71,603.51.

### ii. Excessive and Duplicative Billing

Plaintiff contends that M&I's time sheets contain examples of duplicative and excessive billing. Specifically, Plaintiff points to time entries showing that both attorneys Dart and Gaskill billed significant amounts of time preparing for the deposition of Karen Wild. Plaintiff also argues that M&I has not justified why two attorneys were required to be substantially involved in the case.

"There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman, 836 F.2d at 1302 (citation omitted). "[A] fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." Barnes, 168 F.3d at 432.

In July 2010, attorney Gaskill billed 5.1 hours for reviewing documents and meeting with Ms. Wild in connection with her deposition (Dkt. 249 Ex. 1 at 15). In December 2010, attorney Dart billed approximately 6 hours in preparing for and attending Ms. Wild's deposition (id. at 27-28). According to M&I, attorney Gaskill was primarily responsible for reviewing and preparing the voluminous loan documents for Ms. Wild's deposition. And attorney Dart was primarily responsible

for preparing Ms. Wild as a witness and was the only attorney for M&I that attended the deposition. The billing records support M&I's contention that attorneys Dart and Gaskill played distinct roles in preparing for Ms. Wild's deposition, and the time billed was not excessive.

Billing records for other tasks also demonstrate that attorneys Dart and Gaskill played distinct roles in M&I's defense. For example, attorney Gaskill billed less than an hour for coordinating the mediation,[5] and in October 2010, attorney Dart billed approximately 5.4 hours preparing for and attending the mediation (id. at 26). Also, the billing records show that attorney Gaskill was primarily responsible for drafting M&I's filings with the court, and attorney Dart reviewed and revised the filings after Gaskill drafted them. For instance, attorney Gaskill billed less than 7 hours drafting M&I's nine-page, third motion to dismiss and almost 13 hours drafting M&I's twenty-page response to Plaintiff's summary judgment motion (Dkt. 152, 217, 249 Ex. 1 at 12, 18-19). And attorney Dart billed less than 3 hours for reviewing the third motion to dismiss and .4 hours for reviewing M&I's summary judgment response (Dkt. 249 Ex. 1 at 21, 28).[6] The time billed by attorneys Dart and Gaskill on these tasks is not duplicative or excessive.

M&I is seeking compensation for a total of 278.8 hours billed by its attorneys on the case (less a reduction for time billed in defending Plaintiff's non-FSIPA claims, as discussed below).

---

[5] Because of counsel's habit of block billing, it is impossible to discern exactly how much time attorney Gaskill spent coordinating the mediation. On July 12, 2010, attorney Gaskill billed .4 hours for reviewing a deposition notice, reviewing discovery responses, and reviewing a correspondence from the mediator (Dkt. 249 Ex. 1 at 14). And on August 24, 2010, attorney Gaskill billed .5 hours for reviewing the mediation notice and revising a motion for sanctions (id. at 16).

[6] Counsel's block billing prevents the court from determining how much time attorney Dart actually billed in reviewing the motion to dismiss. On May 14, 2010, attorney Dart billed 2.7 hours for reviewing and revising the motion to dismiss, reviewing a deposition notice, and corresponding with attorneys for other parties (Dkt. 249 Ex. 1 at 21).

Although the case was ultimately resolved on a motion to dismiss, M&I actively litigated the case for almost two years. M&I engaged in significant discovery, filed three motions to dismiss, and responded to a motion for summary judgment. The billing records show that M&I's attorneys spent a reasonable number of hours on compensable legal tasks. No reduction in the fee award to account for duplicative or excessive billing is warranted.

      **c.     Time Spent on Compensable Claims**

Plaintiff's FSIPA claim was one of six claims asserted against M&I, and it is the only claim for which M&I is entitled to a fee award. Where a party is entitled to an award of fees for only one of the claims involved, a court must evaluate the relationship between the claims to determine the scope of the fee award. Durden, 763 F. Supp. 2d at 1306. If claims involve a common set of facts and related legal theories, then a full fee may be awarded unless it can be shown that counsel spent separate and distinct amounts of time on claims for which no attorney's fee award is authorized. Id. Time spent marshaling facts underlying related claims is compensable if it likely would have been spent defending any one or all of the claims. Id. The party seeking the fee award has the burden of allocating fees to compensable claims or demonstrating that such allocation is not possible. Id. at 1307.

All six claims asserted against M&I stem from a common set of facts – alleged misrepresentations contained in an appraisal and in a balance sheet for BI. And the legal theories underlying Plaintiff's claims are related to the extent that they are all premised on establishing the existence of material misrepresentations or omissions (see Dkt. 152, M&I's third Motion to Dismiss (setting out the elements of each claim)). However, it is also apparent that M&I's attorneys spent separate and discrete amounts of time litigating Plaintiff's non-FSIPA claims. For example, less

than one page of M&I's third motion to dismiss comprising nine pages was dedicated to Plaintiff's FSIPA claim (id.). And just over one page of M&I's twenty-page response to Plaintiff's motion for summary judgment was dedicated to Plaintiff's FSIPA claim (Dkt. 217). M&I is therefore entitled to recover some fees billed in defending Plaintiff's non-FSIPA claims, but M&I is not entitled to a full award of fees.

Plaintiff proposes a fifty-five percent across-the-board reduction to account for time spent litigating non-FSIPA claims. In its reply, M&I responds by agreeing to reduce its fee request by $11,403.87 to account for time spent on non-FSIPA claims in connection with M&I's motions to dismiss and M&I's response to Plaintiff's motion for summary judgment (Dkt. 286 Ex. 1). M&I's proposed reduction amounts to an approximately fourteen and one-third percent reduction over its original request for $79,559.45 in attorney's fees.[7] M&I submits that it is entitled to a full award with respect to the remaining billing entries and tasks.

A reduction of the particular tasks identified by M&I is appropriate because only one of its claims entitles it to attorney's fees and costs. However, M&I's billing records do not allow precise delineation between time spent on compensable and noncompensable claims with respect to these or any other tasks. When faced with such uncertainty, an across-the-board reduction is appropriate. The court declines to adopt the $11,403.87 reduction proposed by M&I because that reduction is too small given the overall posture of the case and the various claims.

In determining the appropriate across-the-board reduction, it is important to note that significant time was spent on discovery in this case and that the claims asserted against M&I involve

---

[7] After Plaintiff's unjust enrichment claim was dismissed with prejudice, Plaintiff's FSIPA claim was one of five claims asserted against M&I.

a common factual basis. Although counsel's practice of block billing makes it impossible to discern exactly how much time was spent on discovery, billing entries totaling almost 170 hours involve matters related to discovery.[8] This represents approximately sixty percent of the 278.8 total hours that M&I's attorneys billed on the case. And the remaining fees – comprising the balance of the forty percent of fees claimed – includes work done on non-FSIPA claims as well. The court finds that an appropriate across-the-board reduction of twenty-five percent is appropriate to account for work done on non-FSIPA claims rather than the fifty-five percent reduction sought by Plaintiff.

After applying a ten percent across-the-board reduction to the total fees award claimed, to account for instances of block billing, the requested fee award is reduced to $71,603.51. Next, applying a twenty-five percent across-the-board reduction for work done on non-FSIPA claims results in a total of $53,702.63 in reasonable attorney's fees.

**3.     Costs**

Costs, other than attorney's fees, should be awarded to the prevailing party. Fed. R. Civ. P. 54(d)(1). Pursuant to 28 U.S.C. § 1920, a court may award the following costs:

(1)   Fees of the clerk and marshal;
(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)   Fees and disbursements for printing and witnesses;
(4)   Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)   Docket fees under 28 U.S.C. § 1923;
(6)   Compensation of court appointed experts, interpreters, and special

---

[8] Several of the entries involving discovery matters also represent time spent on other tasks. For example, on October 26, 2010, attorney Gaskill billed .7 hours for reviewing discovery production from a third-party and for corresponding with counsel for another Defendant regarding a motion for summary judgment (Dkt. 249 Ex. 1 at 17). And on October 13, 2010, attorney Dart billed 4.9 hours for attending the mediation and exchanging emails with opposing counsel about discovery issues (id. at 26).

12

interpretation services.

28 U.S.C. § 1920.

A court cannot award costs other than those listed in 28 U.S.C. § 1920 unless authorized by another statute. U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000). In addition, a court can only award costs that are adequately described and documented. Scelta v. Delicatessen Support Servs., Inc., 203 F. Supp. 2d 1328, 1340 (M.D. Fla. 2002). The prevailing party has the burden of establishing that costs are taxable. See id.

Whether deposition costs are recoverable is a factual question that depends on whether the "deposition was wholly or partially necessarily obtained for use in the case." W&O, Inc., 213 F.3d at 620-21 (citation and internal quotation marks omitted). Copy costs are taxable if the prevailing party could have reasonably believed that the costs were necessary. Id. at 623. Copy costs associated with documents produced in discovery are taxable. Id.

M&I seeks an award of $2,722.76 in costs comprising: (1) $1,732.80 in deposition/transcript costs; and (2) $989.96 in copy/production costs (Dkt. 249 Ex. 1 at 2-3, 31). Plaintiff argues that M&I's request for costs should be denied because M&I has not met its burden of demonstrating that the costs were incurred for copies and depositions necessarily obtained for use in the case.

M&I states that it seeks deposition costs incurred in deposing three individuals: (1) William Turkish; (2) Jason Turkish; and (3) Ms. Wild. Although these individuals are not identified in M&I's itemization of costs, that M&I deposed these individuals is not in dispute. The court did not rely on these depositions in granting M&I's third motion to dismiss. But all three individuals were central to Plaintiff's allegations against M&I and were deposed as part of the extensive discovery in this case. And M&I utilized the depositions of William and Jason Turkish in connection with its

13

motion for sanctions. The depositions were therefore necessarily obtained for use in the case, and costs associated with these depositions are recoverable.

As to M&I's request for copy/production costs, M&I has provided no details about these costs other than to assert that they were incurred as part of M&I's production to the parties. Although the prevailing party may recover the actual cost of duplicating documents, it cannot recover the cost of gathering those documents as a prelude to duplication. See Durden v. Citicorp Trust Bank, FSB, No. 3:07-CV-974-J-34JRK, 2010 WL 2105921, at *4 (M.D. Fla. Apr. 26, 2010) (noting that a prevailing party is not entitled to recover for incidental expenses, such as binding, folders, labels, CDs, DVDs, or Bates labeling under the guise of photocopy charges). Because M&I has not described its production costs in sufficient detail, M&I has not met its burden of establishing that the requested $989.96 in copy/production costs are taxable duplication costs. See Scelta, 203 F. Supp. 2d at 1340-41. Accordingly, M&I's request for copy/production costs should be denied.

## Conclusion

M&I's requested attorney's fees award should be reduced by ten percent as a result of block billing. This leaves a corresponding amount of $71,603.51. This amount should be further reduced by twenty-five percent to account for time billed in defending Plaintiff's non-FSIPA claims. This leaves a total recovery of $53,702.63 in attorney's fees. M&I is further entitled to an award of $1,732.80 in deposition costs. Accordingly, and upon consideration, it is **RECOMMENDED** that:

(1) Defendant M&I Marshall & Ilsley Bank's **Motion for Attorneys' Fees and Costs** (Dkt. 231) be **GRANTED** in part and **DENIED** in part as set forth above;

(2) M&I be awarded $53,702.63 in attorney's fees; and

(3) M&I be awarded $1,732.80 in costs.

**Date: October 11, 2011**

　　　　　　　　　　　　　　　　　*/s/ Elizabeth A. Jenkins*
　　　　　　　　　　　　　　　　　ELIZABETH A. JENKINS
　　　　　　　　　　　　　　　　　United States Magistrate Judge


## NOTICE TO PARTIES

　　Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).


Copies to:
District Judge
Counsel/Parties of record