**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BCJJ, LLC, a Florida limited liability corporation,**

**Plaintiff,**

**v.** **Case No. 8:09-cv-551-EAK-EAJ**

**THOMAS J. LEFEVRE, et al.,**

**Defendants.**
______________________________/

## ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 180 | Defendant M&I Marshall & Ilsley Bank's Motion for Sanctions |
| Dkt. 183 | Plaintiff's Response |

Plaintiff BCJJ's Second Amended Complaint (Dkt. 148) contains the following claims against Defendant M&I Marshall & Ilsley Bank ("M&I" or "M&I Bank"):

| | |
|---|---|
| Count II | Violation of § 10(b) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5 |
| Count III | Violation of the Florida Securities and Investor Protection Act, Fla. Stat. § 517.301 (FSIPA) |
| Count IV | Fraudulent Misrepresentation |
| Count V | Negligent Misrepresentation |
| Count VI | Aiding and Abetting Fraud |

**BACKGROUND**

The instant dispute stems from Plaintiff BCJJ's failed investment in Defendant Lefevre's real estate development companies, Bayonne Investments, LLC ("BI") and Bayonne Development, LLC ("Bayonne"). BCJJ brought the instant claim, arguing that its managing members, William Turkish and Jason Turkish, were essentially swindled out of a $400,000 investment they made in a large-scale mixed-use real estate project being developed by Lefevre through his entities, BI and Bayonne. Plaintiff acknowledges that M&I Bank was not a party to the ill-fated investment transaction, but argued that M&I was liable in any event because it had obtained an appraisal letter (the "Appraisal") that overstated the property's value by failing to account for certain joint development restrictions encumbering the property; and because an M&I Bank vice president, Karyn Wild, had allegedly told Jason Turkish on a conference call that BCJJ's $400,000 capital infusion would successfully facilitate BI's refinancing of a portion of the project that had fallen into default.

On March 24, 2010, this Court entered an order dismissing various counts of BCJJ's First Amended Complaint without prejudice and directing BCJJ to file an amended complaint pleading specific facts to connect the Appraisal with M&I Bank, i.e., to set forth exactly how M&I allegedly provided the faulty Appraisal to BCJJ. (Dkt. 136, at 13–15). BCJJ subsequently amended its complaint in accordance with the Court's instructions (Dkt. 148), and M&I thereafter filed a renewed motion to dismiss (Dkt. 152). On March 21, 2011, this Court granted M&I Bank's Motion to Dismiss all outstanding

claims against it with prejudice. (Dkt. 220). M&I Bank then moved for statutory fees and costs with regard to its FSIPA claim (Dkt. 231), which this Court granted and pursuant to which BCJJ was ordered to pay $53,702.63 in attorneys' fees and $1,732.80 in costs to M&I. (Dkt. 320). That award included a twenty-five percent reduction of M&I's requested attorneys' fees because the motion for fees and subsequent award were premised solely on Count III, the FSIPA claim, while the data used to compile M&I's fee request included all pending claims. *See* Dkt. 320, at 4 ("The Magistrate Judge determined that an across-the-board reduction was appropriate, and, after considering the time spent on discovery, and the time spend on non-FSIPA claim, determined that a reduction of 25% was appropriate.").

In the present motion for sanctions, M&I Bank argues that BCJJ included new allegations in its Second Amended Complaint and its Response to M&I's Third Motion to Dismiss that are specious and devoid of any reasonable evidentiary basis. (Dkt. 180, at 4). In particular, M&I submits:

> The only statement in the New Allegations [of the Second Amended Complaint] pertaining to M&I is found in paragraph 29 wherein BCCJJ states that the "substance of the [Appraisal] was first provided over the phone . . . during a conference call . . . . The individuals participating on the call were Kar[y]n Wild (acting on behalf of M&I), Evan Berlin, Tom Levre and Jason Turkish . . . . The discussion centered on the topics of how much money BI owed on its mortgage on the Commercial Property, the balance of the mortgage relative to the value of the property, and the requirements of M&I to recapitalize the loan."

(Dkt. 180, at 4). It further notes that, in its response to M&I's Third Motion to Dismiss, BCJJ falsely alleged that "[Karyn Wild] told BCJJ's managing member, Jason Turkish,

that the Commercial Property had an appraised value of $23.9 million, and described to Turkish the substance of the false appraisal which she had received." (Dkt. 180, at 4); (Dkt. 166, at 2). In support of its motion for sanctions, M&I offers the deposition testimony of both Turkishes, in which both Jason and William Turkish essentially contradict both grounds BCJJ had submitted in support of M&I's liability. The Turkishes' deposition testimony establishes that Karyn Wild did not furnish the Appraisal to M&I or discuss the Appraisal other than to say that M&I had ordered an appraisal for its own lending purposes in 2006 and that the $400,000 capital infusion would support the refinancing of BI's defaulted loan. (Dkt. 180, at 4–9); *see* Dkt. 180, Exs. A, B.

In response, BCJJ argues that the Karyn Wild's statement to Jason Turkish that she had ordered the Appraisal on the subject property effectively rendered her an active solicitor of the $400,000 investment. (Dkt. 183, at 2). BCJJ argues in the alternative that "[e]ven if the Court were to find that the dissemination of the false appraisal letter to BCJJ was not the result of intentional conduct by M&I or Karyn Wild, the Court could still rule in BCJJ's favor on its negligent misrepresentation claim by finding that M&I failed to take reasonable care in communicating the information to others." (Dkt. 183, at 3).[1]

---

[1]BCJJ also argues that resolution of the motion for sanctions was premature because M&I's Third Motion to Dismiss had not yet been resolved at the time the response was filed. However, this Court granted the Third Motion to Dismiss on March 21, 2011, a fact that renders BCJJ's prematurity argument nugatory. (Dkt. 220). BCJJ finally argues that the claims in its Second Amended Complaint might also have an evidentiary basis because it "intend[ed] to question Ms. Wild about a second basis for its claims against M&I which has emerged in discovery thus far: the serious conflict of interest presented by the fact that Mr.

**STANDARD OF REVIEW**

Sanctions pursuant to Federal Rule of Civil Procedure 11 "are proper (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995). The purpose of Rule 11 sanctions in cases involving frivolous filings is to deter the filing of frivolous papers while not "chill[ing] an attorney's enthusiasm or creativity in pursuing factual or legal theories." *McGinnis v. Ingram Equip. Co., Inc.*, 918 F.2d 1491, 1496 (11th Cir. 1990).

> In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry. If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). "A legal claim is frivolous if no reasonably competent attorney could conclude that it has any 'reasonable chance of success' or is a reasonable argument to change existing law." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) (Tjoflat, J.,

---

LeFevre and Ms. Wild . . . were involved in a romantic relationship." Apparently, nothing came of BCJJ's investigation, because BCJJ has failed to again broach this potential avenue of relief or amend its response to include it. At any rate, the Court rejects it. *See* Dkt. 211-1, at 10.

concurring in the appeal and dissenting in the cross-appeal). "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis." *Id.* Finally, it is sometimes proper for the court to impose sanctions on a party's counsel as opposed to the party itself, "since it may well be more appropriate than a sanction that penalizes the parties for the offenses of their counsel." *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992).

Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), the rules are more exacting with regard to the imposition of sanctions in private actions alleging violations of the Securities Act of 1933 or the Securities Exchange Act of 1934. *See* 15 U.S.C. § 77z-1(c) (1933 Act); 15 U.S.C. § 78u-4(c) (1934 Act). "In addition to raising the standard for pleading scienter [in private securities cases], the PSLRA 'mandate[s] imposition of sanctions for frivolous litigation.'" *Thompson*, 610 F.3d at 636 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 547 U.S. 71, 81 (2006)) (second alteration in original). Thus, "the PSLRA's provisions eliminate a district court's discretion on two fronts: (1) in choosing whether to conduct the Rule 11(b) inquiry and (2) in determining whether to impose sanctions following a finding of a Rule 11(b) sanction." *Thompson*, 610 F.3d at 636; *id.* at 666 (Tjoflat, J., concurring in the appeal and dissenting in the cross-appeal) ("[T]he PSLRA strips the district court of the discretion to grant mercy—the PSLRA forces a district court to sanction an attorney for violating any prong of Rule 11."). "If a complaint fails to comply with Rule 11(b), the presumptive sanction is attorneys' fees and expenses." *Thompson*, 610 F.3d at 636. And finally, "[a]lthough

the PSLRA alters the consequences of a Rule 11(b) violation in a private securities fraud action, the substantive analysis under Rule 11 remains the same." *Id.*; *see also Citibank Global Mkts., Inc. v. Santana*, 573 F.3d 17, 32 (1st Cir. 2009) (explaining that the PSLRA "does not alter the standards used to judge compliance with Rule 11").

**DISCUSSION**

M&I moves for sanctions, including any attorneys' fees and costs incurred by it in defense of the instant cause of action, on the basis that BCJJ's filings lack any reasonable legal or factual basis. This Court has already dismissed BCJJ's claims against M&I with prejudice. (Dkt. 220). Were that the end of the story, the deficiencies in BCJJ's papers would likely be attributable to mere questionable lawyering; sanctions would not be appropriate. When viewed with a sharper lens, though, and in light of the procedural posture of this case, a darker picture of BCJJ's conduct emerges.

BCJJ filed its Second Amended Complaint on April 26, 2010. It did so in response to this Court's March 24, 2010 dismissing its First Amended Complaint and directing it, sua sponte, to file an amended complaint including a more definite statement as to the circumstances under which the Appraisal was furnished to BCJJ. In the Second Amendment Complaint, BCJJ claims that, "[t]o entice BCJJ to invest the necessary capital, Wild, Berlin, and LeFevre each described the substance of the false appraisal to Jason Turkish, and represented the value of the Commercial property as $23.9 million." (Dkt. 148, at ¶ 29). And lest there be any confusion as to whether this statement was inadvertent, BCJJ again stated in its Response to M&I's Third Motion to

Dismiss: "[Karyn] Wild told BCJJ's managing member, Jason Turkish, that the Commercial Property had an appraised value of $23.9 million, and described to Turkish the substance of the false appraisal which she had received." (Dkt. 166, at 2).

Unfortunately for BCJJ, the facts have not borne out its assertions regarding Karyn Wild or M&I's actions. William and Jason Turkish, BCJJ's representatives, have *both* deposed that nobody, and certainly not Wild, communicated the substance of the Appraisal to them prior to the closing of the deal. *See* Dkt. 180, at 5–8 (citing and excerpting deposition testimony to that effect). Further, in its response to the extant motion for sanctions, BCJJ does not attempt to justify—perhaps because it cannot—the the alleged inaccuracies regarding its statements about Wild having relayed the substance of the Appraisal. Given that the factual inaccuracies were included in BCJJ's filings only after this Court dismissed its complaint for failing to specify how M&I was responsible for BCJJ being furnished the Appraisal, the Court cannot escape the conclusion that these assertions were cut out of whole cloth. And even if BCJJ did not affirmatively fabricate these claims, its failure to ask the Turkishes about their truth before making them evinces a failure to conduct reasonable inquiry into the evidentiary basis of BCJJ's factual claims. *See Mortensen v. Bank of Am., N.A.*, No. 3:10-CV-13(CDL), 2012 WL 1424502, at *3 (M.D. Ga. Apr. 24, 2012) (granting sanctions where parties' deposition testimony belied their assertions and attorney could have discovered with minimal diligence that parties' claims lacked merit); *see Worldwide Primates*, 87 F.3d at 1255 ("We . . . hold that, under Rule 11, an attorney must make a reasonable

inquriy into both the legal and factual basis of a claim prior to filing suit.").

It is true that the PSLRA only applies to BCJJ's Securities Exchange Act of 1934 Claim (Count II) and thus only mandates sanctions with regard to Count II, but whether the PSLRA applies to one claim or all claims is a point without a difference, for sanctions would be warranted in any event. The lodging of specious claims without any reasonable evidentiary basis in this case was the result of either of two things: (1) BCJJ's attempt to sue everyone, warranted or not, for a deal gone bad, and its failure to investigate its claims before making them (the "throw everything against the wall and see what sticks" approach); or (2) BCJJ's fabrication of the factual allegations regarding Wild discussing the "substance" of the Appraisal with Jason Turkish, (Dkt. 148, at ¶ 29), as part of some cavalier bid to survive M&I's next motion to dismiss. The Court is unsure of which would be worse, though perhaps carelessness is better than dishonesty. Either way, BCJJ's actions are inimical to the ends of justice and anathema to those ideals that should guide all parties when resort to the court system becomes necessary. That being said, M&I's motion for sanctions is granted, and BCJJ is ordered to pay reasonable attorneys' fees and costs for the defense of this action.

The Court notes that though BCJJ has already been ordered to pay $53,702.63 and $1,732.60 in statutorily required attorneys' fees and costs for Count III (FSIPA), it is unclear whether M&I has incurred additional attorneys' fees and costs since April 2011, the date of its previous Motion for Attorneys' Fees and Costs. (Dkt. 231). An evidentiary hearing may be necessary to determine the proper amount of M&I's award.

Case No. 8:09-cv-551-EAK-EAJ

Accordingly, it is

**ORDERED** that Defendant M&I Bank's Motion for Sanctions (Dkt. 180) be **GRANTED**. This matter is referred to the Magistrate Judge, to conduct an evidentiary hearing, if necessary, and for a Report and Recommendation. The Magistrate Judge shall determine the proper amount of reasonable attorneys' fees and costs payable to M&I and whether these costs and fees should be assessed against BCJJ and/or its attorneys, Beck & Lee, P.A.

**DONE AND ORDERED** in Chambers, in Tampa, Florida this 3rd day of July, 2012.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.