UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BCJJ, LLC, etc.,

Plaintiff,

v.                                        CASE NO.  8:09-CV-551-T-17EAJ

THOMAS J. LEFEVRE,
etc., et al.,

Defendants.

_____/


ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 199 | Deposition - William Turkish |
| Dkt. 200 | Deposition - Jason Turkish |
| Dkt. 202 | Deposition - Evan Berlin |
| Dkt. 256 | Motion for Summary Judgment (Berlin Law Firm, P.A., Evan Berlin) |
| Dkt. 257 | Affidavit |
| Dkt. 258 | Affidavit |
| Dkt. 259 | Affidavit |
| Dkt. 263 | Motion for Summary Judgment (BCJJ, LLC) |
| Dkt. 264 | Notice |
| Dkt. 265 | Notice |
| Dkt. 281 | Motion for Summary Judgment (Berland Investments, LLC) |
| Dkt. 282 | Affidavit |
| Dkt. 283 | Affidavit |
| Dkt. 284 | Affidavit |
| Dkt. 291 | Response (BCJJ, LLC) |
| Dkt. 292 | Notice |
| Dkt. 293 | Response (Berland, Berlin, Berlin Law Firm, P.A.) |
| Dkt. 294 | Notice |
| Dkt. 297 | Response (BCJJ, LLC) |
| Dkt. 298 | Notice |

Case No. 8:09-CV-551-T-17EAJ

In the Second Amended Complaint (Dkt. 148), Plaintiff BCJJ, LLC ("BCJJ") asserts the following counts against Defendants Evan Berlin, Berlin Law Firm, P.A., and Berland Investments, LLC:

| Count I | 15 U.S.C. Sec. 1703(a)(2) Interstate Land Sales Full Disclosure Act |
|---|---|
| Count II | Sec. 10(b), Rule 10b-5 |
| Count III | Ch. 517.301, Fla. Stat. |
| Count IV | Fraudulent Inducement |
| Count V | Negligent Misrepresentation |
| Count VI | Aiding and Abetting Fraud |
| Count X | Legal Malpractice/Negligence |
| Count XI | Ch. 501.201, Fla. Stat. |

In the Second Amended Complaint, Plaintiff alleges that Defendant Evan Berlin is president of Berlin Law Firm, and is a manager of Berland Investments, LLC and TT, LLC. Plaintiff further alleges that at all relevant times, Defendant Berlin acted as an agent for Berland Investments, LLC, as an agent for TT, LLC, and as an agent for Bayonne Investments, LLC. (Dkt. 148, p. 3).

In the Second Amended, Plaintiff alleges that Defendant Berlin Law Firm, P.A. is a Florida corporation and law firm with its principal place of business in Sarasota County, Florida. (Dkt. 148, p. 3).

In the Second Amended Complaint, Plaintiff alleges that Defendant Berland Investments, LLC is a member of Bayonne Investments, LLC, and, at all times relevant to this action, acted as an agent of Bayonne Investments, LLC. (Dkt. 148, p. 3).

In the Second Amended Complaint, Plaintiff alleges that Defendant Thomas J. LeFevre is the trustee of Defendant Thomas J. LeFevre Living Trust, is the sole managing member of Tom's Friends, LLC, is the sole director of Tom's S Corp, is the sole managing member of Bayonne Investments, LLC, and is a manager of TT, LLC.

2

Case No. 8:09-CV-551-T-17EAJ

Plaintiff alleges that, at all times relevant to this action, Defendant Thomas J. LeFevre acted as an agent for Thomas J. LeFevre Living Trust, Tom's S Corp, Bayonne Investments, LLC, and TT, LLC.  (Dkt. 148, p. 3).

Defendants Evan Berlin, Berlin Law Firm, P.A. and Berland Investments, LLC ("Berlin Defendants") move for entry of summary judgment as to each count of the Second Amended Complaint.  Defendant Berlin contends that he represented the interests of Thomas J. LeFevre and his trust in the transaction between Defendant LeFevre and Plaintiff BCJJ, LLC in March, 2007.  Defendant Berlin contends that he owned a membership interest in TT, LLC, but had no management or other authority for TT, LLC in March, 2007.  Defendant Berlin further contends that he executed a consent document for the transfer of seven investment units in Bayonne Investments, LLC from Thomas LeFevre to Plaintiff BCJJ on behalf of Berland Investments, LLC, but otherwise did not act as an agent for Berland Investments, LLC or Bayonne Investments, LLC as to the March 2007 transaction.  Defendant Berlin further contends that Berland Investments, LLC had no involvement in the BCJJ transaction other than to provide its consent for LeFevre's transfer of seven investments units in Bayonne Investments, LLC.

Plaintiff BCJJ, LLC opposes Defendants' Motions for Summary Judgment, and has filed a Motion for Summary Judgment.  Plaintiff seeks entry of summary judgment as to Counts I, II, III, IV, V, VI, X and XI.  Plaintiff BCJJ seeks entry of summary judgment in favor of Plaintiff on the fraud-related claims against the Berlin Defendants, based on the following contentions.   Plaintiff contends that Evan Berlin did not fill the role of a typical transactional attorney, but was a "LeFevre insider" already invested in the same development project in which Plaintiff was seeking to invest.  Plaintiff BCJJ argues that Berland Investments, LLC held a 1.75 interest in Bayonne Investments, LLC, representing an investment of $100,000, and Defendant Berlin profited directly from Plaintiff's investment, which ensured that Bayonne Investments, LLC did not enter into default on the mortgage burdening the Commercial Property.  Plaintiff BCJJ

Case No. 8:09-CV-551-T-17EAJ

contends that Defendant Berlin not only prepared legal documents, but actively encouraged and solicited Plaintiff to make the investment.  Plaintiff BCJJ contends that Defendant Berlin did so to protect Defendant Berland's investment in Bayonne Investments, LLC, as Defendant Berlin and Berlin Law Firm, P.A. were never paid for the legal services they provided in connection with Bayonne Investments, LLC.  Plaintiff BCJJ further argues that Defendant Berlin was deeply intertwined in Defendant Lefevre's affairs, based on the fact that Defendants Berlin/Berlin Law Firm, P.A. prepared the Operating Agreement for TT, LLC, and Berland Investments, LLC was a member of TT, LLC.  Plaintiff BCJJ further argues that Defendant Berlin was familiar with GLRS, LLC, and had represented that entity in the course of Defendant Berlin's longstanding and extensive relationship with Defendant LeFevre.  Plaintiff argues that Defendant Berlin knew that Defendant LeFevre could not pledge his Membership Units in TT, LLC and GLRS, LLC without obtaining the necessary consents.  Plaintiff BCJJ argues that Defendant LeFevre never obtained the necessary consents, and the Berlin Defendants actively misrepresented and concealed from Plaintiff that Defendant LeFevre did not obtain the required consents.

I.  Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

> "The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

4

Case No. 8:09-CV-551-T-17EAJ

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

II.  Prior Orders

A.  Dkt 230 - Order granting in part and denying in part Motions to Dismiss of Evan Berlin, Berlin Law Firm, P.A., Berland Investments, LLC

- 1.  Count II - granting in part with prejudice as to Evan Berlin as to allegations of "false appraisal" and as to alleged understatement of financial liabilities of Bayonne Investments, LLC, and otherwise denied;

    - granting with prejudice as to Berlin Law Firm, P.A.;

    - granting with prejudice as to Berland Investments, LLC, as to allegations of "false appraisal" and as to alleged understatement of financial liabilities of Bayonne Investments, LLC.

- 2.  Count III - granting in part as to Evan Berlin as to allegations of "false appraisal" and as to alleged misrepresentation of financial condition of Bayonne Investments, LLC and otherwise denied;

    - granting as to Berlin Law Firm, P.A. with prejudice;

    - granting in part with prejudice as to Berland Investments, LLC as to allegations based on "false appraisal" and alleged misrepresentation of financial condition of Bayonne Investments,

Case No. 8:09-CV-551-T-17EAJ

LLC.

3. Count IV - granting in part as to Evan Berlin and Berland Investments, LLC
   as to allegations based on "false appraisal" and alleged
   misrepresentations as to financial condition of Bayonne      Investments, LLC.

4. Count V - granting in part with prejudice as to Evan Berlin
   and Berland Investments, LLC as to
   allegations based on  "false appraisal" and
   alleged    misrepresentations as to financial
   condition of
   Bayonne Investments, LLC.

5. Count VI - denying as moot as to Evan Berlin and granting in part with
   prejudice as to common law fraud based on
   allegations of the "false appraisal" and the
   alleged  misrepresentation of the financial
   condition of Bayonne Investments, LLC.


B. Dkt. 247  -   Motion for Summary Judgment (Bayonne, LLC) and
                 Cross-Motion for Summary Judgment (BCJJ, LLC)

The Court granted Defendant Bayonne, LLC's Motion for Summary Judgment,
and denied Plaintiff BCJJ, LLC's Cross-Motion for Summary Judgment on the following
Counts:

| | |
|---|---|
| Count I | 15 U.S.C. Sec. 1703(a)(2)<br>Interstate Land Sales Full Disclosure Act |
| Count II | Sec. 10b, SEC Rule 10-b5 |
| Count III | Ch. 517.301, Florida Statutes |
| Count IV | Fraudulent Inducement |
| Count V | Negligent Misrepresentation |
| Count XI | Ch. 501.201, Florida Statutes |

Case No. 8:09-CV-551-T-17EAJ

            Count XII                 Equitable Lien

       The Court included a detailed Statement of Facts in the above Order (Dkt. 247, pp. 7-29). The Court incorporates the Statement of Facts by reference, and has included some of those Statements below for ease of reference.

III. Allegations of Second Amended Complaint (Dkt. 148) Which Survived Motions to Dismiss

       The surviving allegations made by Plaintiff BCJJ, LLC against Evan Berlin and Berlin Law Firm, P.A. are related to alleged representations contained within the Security Agreement that was drafted by Berlin Law Firm, P.A., and which, once duly executed, would serve as secondary and contingent collateral should the loan not be paid back when due.

       The surviving allegations made by Plaintiff BCJJ, LLC against Berland Investment, LLC are related to Berland's ownership interest in Bayonne Investments, LLC.

A. As to Evan Berlin and Berlin Law Firm, P.A.:

             Count I        Berlin as a "Developer" under the Act and Berlin Law Firm, as agent for the Developers, "solicited and attempted to encourage BCJJ to acquire Unit 441 in Grande Bay Condominium," (Pars. 52, 53) and "Defendants intentionally misled and deceived BCJJ by misrepresenting that LeFevre and the LeFevre Trust were authorized to pledge membership units in GLRS and TT." (Par. 56)

             Count II &
             Count III      Berlin "made false statements in the Security Agreement and Collateral Assignment" that LeFevre was authorized to pledge membership units in TT and GLRS. (Par. 65). The allegations

Case No. 8:09-CV-551-T-17EAJ

remaining pertain to alleged conduct "based upon Defendant, Berlin's ownership interest in Bayonne Investments, LLC. "   Berlin Law Firm is not a party to Counts II and III.

Count IV      Berlin made false statements in the Security Agreement and Collateral Assignment that Lefevre was authorized to pledge membership units in TT and GLRS (Par. 88).  Berlin Law Firm is not named in Count IV.  It is assumed that the allegedly fraudulent statements were made by Berlin in his capacity as a member of Berland Investments, LLC.

Count V      Berlin, as legal counsel intimately familiar with the structure of Bayonne Investments, LLC and involvement through Berland in Bayonne Investments, LLC, made false statements in the Security Agreement and Collateral Assignment that LeFevre was authorized to pledge membership units in TT and GLRS (Pars. 97, 100).  Berlin Law Firm is not a party to Count V.

Count VI      Berlin Law Firm had knowledge of fraud (relating to statements made concerning consents) because its president played an instrumental role in carrying out the fraud. (PR. 109).  Berlin Law Firm "drafted and placed its imprimatur on the documents necessary to implement BCJJ's investment in Bayonne Investments, LLC, including the false representations and warranties of LeFevre and LeFevre Trust. (Par. 110).  Evan Berlin is not a party to Count VI.

Count X -      Berlin and Berlin Law Firm were employed to draft and prepare documents necessary to effectuate BCJJ's investment in Bayonne Investments, LLC.  (Par. 129). Alternatively, BCJJ was an assignee of the attorney-client relationship running from Berlin and Berlin Law Firm to LeFevre, LeFevre Trust and Tom's Friends. (Par. 131). Berlin and Berlin Law Firm neglected their reasonable duty to ensure the accuracy of the representations and warranties in the documents for BCJJ's investment in Bayonne Investments, LLC.

Case No. 8:09-CV-551-T-17EAJ

Count XI      Berlin and Berlin Law Firm violated FDUTPA through statutory violations consisting of unfair and deceptive acts and practices, as described in Count I (ILSA).

B. As to Defendant Berland Investments, LLC:

Count I      Berland as a "Developer" under the Act solicited and attempted to encourage BCJJ, LLC to acquire Unit 441 in Grande Bay Condominium (Pars. 52, 53). Berland intentionally misled and deceived BCJJ by misrepresenting that LeFevre and the LeFevre Trust were authorized to pledge membership units in GLRS and TT. (Par. 56).

Count II &
Count III      Berland, through its alleged agent, Evan N. Berlin, "made false statements in the Security Agreement and Collateral Assignment" that LeFevre was authorized to pledge membership units in TT and GLRS. The allegations remaining against Berland pertain to alleged conduct "based upon Defendant Berlin's ownership interest in Bayonne Investments, LLC." (Dkt. 230, pp. 19, 26).

Count IV      Berland, through Berlin, made false statements in the Security Agreement and Collateral Assignment that Lefevre was authorized to pledge membership units in TT and GLRS. (Par. 88). It is assumed that the allegedly fraudulent statements were made by Berlin in his capacity as a member of Berland. Berlin Law Firm is not a party to Count IV.

Count V      Berland, through Berlin, as legal counsel intimately familiar with the structure of Bayonne Investments, LLC via Berlin's ownership interest and involvement through Berland in Bayonne Investments, LLC, made false statements in the Security Agreement and Collateral Assignment that Lefevre was authorized to pledge membership units in TT and GLRS. (Pars. 97, 100).

Count XI      Berland violated FDUTPA through statutory violations consisting of unfair and deceptive acts and practices, as described in Count I. (Par. 140).

Case No. 8:09-CV-551-T-17EAJ

The claims of Plaintiff BCJJ, LLC as to Defendants Evan Berlin, Berlin Law Firm, P.A. and Berland Investments, LLC, center on the "Unit Upgrade Agreement," (Dkt. 148-5, the Security Agreement (Dkt. 148-6), and the Collateral Assignment of Distributions and Profits (Dkt. 148-7).

IV.  Judicial Notice

The Court takes judicial notice of the public records of Sarasota County Circuit Court, Case No. 2009 CA 013978 NC, SABAL PALM BANK v. TT, LLC, a Florida limited liability company, THOMAS L. LeFEVRE, individually, DR. EMMANUEL J. ROTHIS, individually, DONALD M. STUTRUD, individually, BCJJ, LLC, a Florida limited liability company, and one or more UNKNOWN TENANTS.   That case is a mortgage foreclosure case in which Sabal Palm Bank sought to foreclose the lien and encumbrance of its Mortgage and Note (Count I), sought the entry of a Judgment for damages against the Borrower (County II) and sought a judgment for damages ("deficiency") against the Guarantors pursuant to the terms and provisions of the Guarantys (Count III), (Dkt. 265-2), and is currently an open case.  On October 14, 2009, Sabal Palm Bank entered into a Settlement Agreement with TT, LLC, Dr. Emmanuel Rothis, individually, and Donald Stutrud, individually.  (Dkt. 292-6). Emmanuel J. Rothis and Donald M. Stutrud executed the Settlement Agreement in their capacities as Managing Members of TT, LLC, the Borrower, and in their individual capacities as Guarantors.

The Court takes judicial notice of the public records of Sarasota County Circuit Court, Case No. 2008 CA 4508 NC, SPCP GROUP, LLC, etc., AS ASSIGNEE OF M & I MARSHALL & ILSLEY BANK, etc., AS SUCCESSOR BY MERGER TO GOLD BANK v. BAYONNE INVESTMENTS, LLC, etc., THOMAS J. LEFEVRE and EMANUEL J. ROTHIS.  An Amended Final Judgment of Foreclosure was entered on April 3, 2009. (Dkt. 265-1).

Case No. 8:09-CV-551-T-17EAJ

V.  Statement of Undisputed Facts

1.  In his Affidavit (Dkt. 259) , Thomas LeFevre states that he asked Evan Berlin to assist him drafting the Contract for sale of the seven membership units of Bayonne Investments, LLC, and to draft the other documents necessary to effect that transaction, and that Evan Berlin agreed to represent him.  Thomas LeFevre further states that the day before the closing, some of the terms of the transaction were supplemented by BCJJ, LLC and by himself.  Thomas LeFevre further states that the additional terms were communicated to Evan Berlin on March 26, 2007 by himself and Jason Turkish, and he (Thomas Lefevre) asked Evan Berlin to draft the security documents to evidence the pledge of the shares in TT, LLC and GLRS, LLC, once authorized and executed.

Thomas LeFevre further states that he did not ask Evan Berlin or Berlin Law Firm, P.A. to prepare any other documents necessary to obtain consents from the TT, LLC or GLRS, LLC members for the pledge, nor did he ask Evan Berlin to communicate with any members of TT, LLC or GLRS, LLC to obtain those documents.  Thomas LeFevre further states that at no time during any conversation in which Thomas LeFevre participated did William Turkish, Jason Turkish or any representative of Plaintiff BCJJ, LLC ask Evan Berlin or Berlin Law Firm, P.A. to prepare any documents whatsoever, including any documents necessary to obtain consents from the TT, LLC members or GLRS, LLC members for the pledge, nor did they ask him to communicate with any members of TT, LLC or GLRS, LLC to obtain those consents.

Thomas LeFevre further states that Evan Berlin and Berlin Law Firm, P.A. acted as counsel to Thomas LeFevre up to and including the closing the BCJJ transaction. Thomas LeFevre states that he did not authorize Evan Berlin or Berlin Law Firm, P.A. to act as counsel or represent the interests of BCJJ, LLC, Jason Turkish, William Turkish and/or Francine Turkish, and the Turkishes were aware of that fact.

11

Case No. 8:09-CV-551-T-17EAJ

2. In his Affidavit (Dkt. 259), Thomas LeFevre further states that the loans of TT, LLC and GLRS, LLC went into default in late 2007 and early 2008. Thomas LeFevre states that the TT, LLC property was relinquished to the lender in foreclosure, and he received no funds when the property was disposed of. Thomas LeFevre further states that the parcels owned by GLRS, LLC were sold for an amount less than the outstanding loan balance, and he did not receive and was not entitled to receive any distributions or other funds from the sale of either parcel by GLRS.

3. The Operating Agreement of Bayonne Investments, LLC provides that:

6.1     **Authority and Power.** Except as expressly set forth in this Agreement, only Members who hold Managerial Units shall be the Managers, and each Member holding Managerial Unit(s) from time to time shall have full, exclusive and complete authority and discretion to manage and control the business of the company and shall make all decisions affecting the business of the Company. Any person dealing with the Company may conclusively rely on a certificate signed by the Managers as to its identity and authority to act on behalf of the Company, and without further inquiry may relay upon the authority of the Managers to perform any act or execute and deliver any instrument for the Company.....

6.3     **Limitations Upon Rights and Powers of the Managers.**

....

(b)     **Consent of Members Required**. Except as expressly permitted by this Agreement, the Managers shall not have the authority to do the following acts without the prior consent of the members holding at least seventy percent (70%) or more of the outstanding Units:

....

12

Case No. 8:09-CV-551-T-17EAJ

>     (iv)    admit a new Member or issue additional Units in the Company;
>
>     ....
>
>     (c)    **Unanimous Consent of Members Required**.  Except as expressly permitted by this Agreement, the Managers shall not have the authority to do any of the following acts without the prior unanimous consent of the Members:
>
>     (i)    any act in contravention to this Agreement;
>     (ii)    any act that would cause the Company to become taxable as an association
>     (iii)    any act that would subject any Member to personal liability for acts of the Company or a Managers; or
>     (iv)    possess or assign rights in Company Proper for other than a Company purpose.

(Dkt. 264-3, pp. 12-14).   Tom's S Corp held one managerial unit in Bayonne Investments, LLC on March 27, 2007.  Compass Property Investments II, LLC, Tom's Friends, LLC and Berland Investments, LLC held investment units in Bayonne Investments, LLC at that time (35.7, 61.55,1.75 respectively).  (Dkt. 264-3, p. 29).

    4. Tom's Friends, LLC held the seven Investment Units in Bayonne Investments, LLC that Thomas LeFevre offered to sell to BCJJ.

    5. The Operating Agreement of Tom's Friends, LLC of November 22, 2005 provides:

>     6.2    Limitations Upon Rights and Powers of the Managers.
>
>     ....

13

Case No. 8:09-CV-551-T-17EAJ

    (c)   <u>Unanimous Consent of Members Required.</u>  Except as expressly permitted by this Agreement, the Managers shall not have the authority to do any of the following acts without the prior unanimous consent of the Members:

        (iv)   possess or assign rights in Company Property for other than a Company purpose.

(Dkt. 292-4, p. 12).

    7.  The Amended and Restated Operating Agreement of TT, LLC dated 2/21/2007 (Dkt. 256-5, pp. 29-59) provides:

### Article 9: Transfer of Units

**9.1** <u>General.</u>  Except as provided in this Agreement and applicable law, a Member may not sell, transfer, assign, or subject to a security interest (each a "transfer") any or all of the Units owned by such Member....

....

**9.3** <u>Ability to Encumber.</u>  No Member shall have the right to encumber or pledge all or any of the Units owned by such Member without prior written consent of all of the Manager(s).

    8.  On March 27, 2007, the Managers of TT, LLC were Tom's S Corp, Emmanuel J. Rothis, and Donald Stutrud, as Trustee of Stutrud Family Trust, each holding one managerial unit. (Dkt. 264-4, p. 32).

    9.  The Operating Agreement of GLRS, LLC dated July 23, 2004 (Dkt. 256-5, pp. 60-70, 256-6, pp. 1-14) provides:

Case No. 8:09-CV-551-T-17EAJ

## 12. Assignment of Interests

Except as otherwise provided in this Agreement, no Member or other person holding any interest in the Limited Liability Company may assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of his interest in the Limited Liability Company, including without limitation the capital, profits or distributions of the Limited Liability company without the prior written consent of the other Members in each instance.

....

A Member may assign all or any part of such Member's interest in the allocations and distributions of the Limited Liability Company to any of the following (collectively the "permitted assignees"): any person, corporation, partnership or other entity as to which the Limited Liability Company has given consent to the assignment of such interest in the allocations and distributions of the Limited Liability company by the unanimous vote or consent of the Members. An assignment to a permitted assignee shall only entitle the permitted assignee to the allocations and distributions to which the assigned interest is entitled, unless such permitted assignee applies for admission to the Limited Liability Company and is admitted to the Limited Liability company as a Member in accordance with this Agreement.

An Assignment, pledge, hypothecation, transfer or other disposition of all or any part of the interest of a Member in the Limited Liability Company in violation of the provisions hereof shall be null and void for all purposes.

10. As of July 23, 2004, the Members of GLRS, LLC were Thomas J. LeFevre, Managing Member, Donald Stutrud, Emmanuel J. Rothis and James Giftos, each having a 25% interest.  (Dkt. 256-5, p. 65).

Case No. 8:09-CV-551-T-17EAJ

**Testimony of William Turkish**

11.  William Turkish testified that his direct discussions with Evan Berlin as to the subject transactions were as follows: 1) at the grand opening; 2) conversations about the [Unit] 241 contract; 3) Evan said "Why is Tommy giving you such a good deal?"; and 4) in Fall, 2007, regarding the title policy.  (Dkt. 199-1, p. 163).

12.  Christopher Sullivan, Esq. assisted William Turkish in forming BCJJ, LLC. (Dkt. 199-1, p. 10;

13.  William Turkish testified that "Transaction 1," which involved negotiations between March 15, 2007 and March 23, 2007,  was to buy seven units of Bayonne Investments, LLC, and get an upgrade to purchase Unit 441, without any security. William Turkish further testified that Christopher Sullivan was involved in the transaction until March 23, 2007, when Christopher Sullivan communicated to Plaintiff not to proceed.  (Dkt. 199-1, p. 28).

14.  William Turkish testified that he did not terminate the relationship with Christopher Sullivan.  (Dkt. 199-1, p. 33).

15.  William Turkish testified that "Transaction 2," which involved negotiations between March 23, 2007 and March 27, 2007, was to buy seven units of Bayonne Investments, LLC, best efforts to upgrade from Unit 241 to Unit 441, and secured by TT, LLC and GLRS.  (Dkt. 199-1, pp. 28-29).  William Turkish further testified that, after Christopher Sullivan left [on a trip],  Evan Berlin represented Plaintiff as to "Transaction 2" as of  March 26, 2007, based on an e-mail from Evan Berlin as to the security for "Transaction 2". (Dkt. 199-1, p. 27, pp. 150-151).  In addition to the e-mail, William Turkish testified:

Case No. 8:09-CV-551-T-17EAJ

> Q.  Besides Evan Berlin sending an e-mail that says
> something to the effect of "this is the security you're looking
> for," are there any other facts or circumstances where you
> engaged Evan Berlin and the Berlin Law Firm to act as the
> lawyer for BCJJ?
>
> A.  Yeah, it's my understanding that he had $100,000 at risk
> and he was doing—he was basically accommodating us to
> save his $100,000 investment.  That was the consideration.
> And actually at that closing, my recall was, even though he
> wasn't there, it was adversarial to Tom LeFevre, not to me.

(Dkt. 199-1, p. 151).

16.  William Turkish testified that he did not have written communication with
Christopher Sullivan as to Transaction 1 or 2, but only with Jason Turkish.  (Dkt. 199-2,
p. 8).

17.  William Turkish testified that he did not tell Evan Berlin or any member of
the Berlin Law Firm that Christopher Sullivan was no longer Plaintiff's lawyer and
Plaintiff was looking to Evan Berlin and Berlin Law Firm to protect his interest.  William
Turkish testified that Jason Turkish was in charge that week.  (Dkt. 199-1, p. 153).

18.  William Turkish testified that, as an attorney, it is usual practice to have a
fee agreement with his clients.  William Turkish further testified that he did not propose
a written fee agreement between Plaintiff BCJJ or Evan Berlin or the Berlin Law Firm.
(Dkt.  199-1, p. 154).

19.  William Turkish testified that the funds given to Berlin Law Firm included
only the $330,000 transferred from Plaintiff BCJJ to Defendant M&I Bank.  (Dkt. 199-1,
p. 155).  William Turkish testified that Plaintiff BCJJ did not give Berlin Law Firm any
other money, directly or indirectly, in March, 2007.  (Dkt. 199-1, p. 156).